**WALDMAN PUBLISHING CORP. and Playmore Inc., Publishers, Plaintiffs–Appellees,**

v.

**LANDOLL, INC., Defendant–Appellant,**

**Martin Myers & James Landoll, Defendants.**

**No. 477, Docket 94–7428.**

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 1994.

Decided Dec. 22, 1994.

Robert L. Epstein, New York City (Harold James, James and Franklin, of counsel), for defendant-appellant.

Charles Guttman, Mineola (Loretta Gastwirth, Danielle Laibowitz, Meltzer, Lippe, Goldstein, Wolf, Schlissel & Sazer, P.C., of counsel), for plaintiffs-appellees.

Before: OAKES, KEARSE and PRATT, Circuit Judges.

OAKES, Senior Circuit Judge:

This appeal presents the issue whether the prohibition of "false designation of origin" in section 43(a) of the Lanham Act of 1946, 15 U.S.C. § 1125(a) (Supp. IV 1992) ("section 43(a)"), applies to a misattribution of authorship of a written work. The issue arises on the appeal of defendant Landoll, Inc. ("Landoll") from two orders of the United States District Court for the Southern District of New York, Charles S. Haight, Jr., *Judge.* The first, that of April 8, 1994, holds that plaintiffs Waldman Publishing Corp. ("Waldman") and Playmore Inc., Publishers ("Playmore") showed a likelihood of success on their claim that Landoll violated section 43(a) by publishing books substantially similar to those published by Waldman without designating Waldman as the source of the books. *Waldman Publishing Corp. v. Landoll, Inc.,*

848 F.Supp. 498 (S.D.N.Y.1994). The second, that of April 21, 1994, grants a preliminary injunction which, *inter alia,* prohibits Landoll from publishing or selling any books which copy to a substantial degree books published by Waldman and distributed by Playmore. We agree that Waldman has shown a likelihood of success on its claim that Landoll falsely designated the source of its books and that this false designation will cause consumer confusion. However, we remand for a determination of whether Waldman and Playmore can show irreparable economic harm from the false designation. The injunction is vacated, and the case is remanded.

## Background

### I. Facts

The facts as found by the district court are as follows, and they are not challenged in this appeal:

Waldman publishes a line of children's books. Playmore sells and distributes the books for Waldman. The books are adaptations of literary works that are in the public domain, including *Oliver Twist, The Merry Adventures of Robin Hood, The Mutiny on Board H.M.S. Bounty, Black Beauty, The Swiss Family Robinson,* and *David Copperfield.* The Waldman books are abbreviated versions of the classics. They are written in simplified language and have illustrations on every other page in order to make them more appealing to young children.

In creating this series, Waldman contracted with writers to adapt the text of the classics and with artists to create the illustrations. The writers and artists are credited in the front of each book. Each book also contains a copyright notice on behalf of Playmore and Waldman for the cover, and on behalf of Waldman for the text.[1]

Waldman and Playmore began selling the softcover line of books called Illustrated Classics in 1979, and introduced hardcover versions of the same books called Great Illustrated Classics in 1990. There are thirty-six

---

1. At the time the district court issued the preliminary injunction, Waldman and Playmore had not registered their copyrights with the Copyright Office. They have now done so, and they correspondingly amended their complaint to allege copyright infringement. As the complaint was amended after this appeal was taken, we cannot consider the copyright claim.

titles currently in print in the softcover series and thirty-five in hardcover. Waldman and Playmore sell the books to retail outlets such as discount department stores, toy stores, drug stores and book stores.

Defendant Landoll also publishes children's books. In December 1993, Landoll began publishing and selling a line of books called First Illustrated Classics. The series consists of six softcover books that are illustrated adaptations of *Oliver Twist, The Merry Adventures of Robin Hood, The Mutiny on Board H.M.S. Bounty, Black Beauty, The Swiss Family Robinson,* and *David Copperfield.* Landoll began publishing and selling hardcover versions of the books in January 1994.

The Landoll books are not exact copies of the Waldman books. It is undisputed by the parties that the cover designs are not confusingly similar. However, the arrangement of the chapters in the Landoll books mirrors that in the Waldman books, and the Landoll texts closely follow the Waldman texts. Many of the illustrations in the Landoll books depict the same events as are illustrated in the Waldman books.

Landoll purchased the six adaptations from an English publisher named Peter Haddock on a "camera ready" basis, meaning that Haddock sent the text and illustrations to Landoll, and Landoll published the books at its facility. Each book displays the Landoll logo and includes a copyright notice on behalf of Landoll. A writer by whom the story is "retold" and an illustrator are credited in each book.

II. *Procedural History*

Waldman and Playmore filed a complaint in the Supreme Court of the State of New York, New York County, on March 21, 1994, alleging that Landoll had violated section 43(a) of the Lanham Act, New York common

law, and section 368–d of New York General Business Law. Waldman and Playmore alleged, *inter alia,* that the books published by Landoll entered into the stream of commerce with a false designation of origin because a recipient of the books would likely think that the books originated with Landoll, when they in fact originated with Waldman.[2] On March 23, 1994, Landoll removed the action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1441(a) on the basis of federal question jurisdiction.

On March 25, 1994, Waldman and Playmore applied for, and the court issued (1) an order for Landoll to show cause why a preliminary injunction should not issue, and (2) a temporary restraining order which, *inter alia,* prohibited Landoll from publishing or selling its *Oliver Twist, The Merry Adventures of Robin Hood, The Mutiny on Board H.M.S. Bounty, Black Beauty, The Swiss Family Robinson,* and *David Copperfield.* Between March 30 and April 5, 1994, the court held a four-day hearing during which it heard evidence on the order to show cause.

On April 8, 1994, the court ordered that a preliminary injunction issue against Landoll. The court held that Waldman and Playmore had shown a likelihood of success on their claim of false designation of origin in violation of section 43(a), and that in the absence of a preliminary injunction they would suffer irreparable harm.[3] On April 21, 1994, the court issued a preliminary injunction which, *inter alia,* prohibits Landoll from publishing or selling any books which copy to a substantial degree books published by Waldman and distributed by Playmore. This appeal ensued.

*Discussion*

*Standard of Review*

 A preliminary injunction may be granted only upon a demonstration of "irrep-

**2.** The complaint also alleged trade dress infringement in violation of section 43(a), and Waldman and Playmore originally argued for a preliminary injunction on this ground. However, they dropped the trade dress claim as a basis for a preliminary injunction during their summation at the hearing before the district court, and they have since dropped the claim from their Second Amended Complaint.

**3.** The court also held that Waldman's and Playmore's common law claims were preempted by Section 301(a) of the Copyright Act, 17 U.S.C. § 301(a) (1988). This portion of the order was not appealed.

arable harm, and 'either (1) a likelihood of success on the merits of [the] case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in [ ] favor [of the moving party].' " *Polymer Technology Corp. v. Mimran*, 37 F.3d 74, 77–78 (2d Cir.1994) (quoting *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 314–15 (2d Cir.1982)); *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam). The decision whether to grant a preliminary injunction is within the discretion of the trial judge, *Polymer Technology*, 37 F.3d at 78, and if the moving party has established the requirements for such an injunction, the injunction may be reversed only if the district court has abused its discretion. *Arrow United Indus. v. Hugh Richards, Inc.*, 678 F.2d 410, 414 (2d Cir.1982). A district court may abuse its discretion by applying an incorrect legal standard or by basing the preliminary injunction on a clearly erroneous finding of fact. *King v. Innovation Books*, 976 F.2d 824, 828 (2d Cir.1992). *See also* Henry J. Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747 (1982).

## I. Likelihood of Success on the Lanham Act Claim

A false reference to the origin of a work, or a reference which is misleading or likely to confuse, may form the basis of a claim under section 43(a) of the Lanham Act. *King*, 976 F.2d at 828. Section 43(a) provides, in relevant part:

(1) Any person who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin . . . which—

(A) is likely to cause confusion . . . as to the origin . . . of his or her goods . . .

. . . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. 1125(a) (Supp. IV 1992).

In order to show likelihood of success on their claim, Waldman and Playmore must show that Landoll affixed a false designation of origin to its books, that Landoll used the false designation in commerce, that the false designation is likely to cause consumer confusion, and that Waldman and Playmore are likely to be damaged by the false designation. The parties do not contest that the designation was used in commerce.

### A. False Designation of Origin

The first question is whether Landoll's acts constitute a false designation of origin under section 43(a). The section has been interpreted as prohibiting misrepresentations as to the source of a product in primarily two types of activities: (1) false advertising and (2) "passing off" (also called "palming off") in which "A" sells its product under "B's" name. *See Roho, Inc. v. Marquis*, 902 F.2d 356, 359 (5th Cir.1990). However, section 43(a) also prohibits a practice termed "reverse passing off," in which "A" sells "B's" product under "A's" name. *Id. See generally Restatement (Third) of Unfair Competition* ("*Restatement*") § 5 (Tent. Draft No. 1 1988).

The typical reverse passing off case involves a manufactured product rather than a written work. For example, the defendant, Richards, in *Arrow United Industries v. Hugh Richards, Inc.*, 678 F.2d 410 (2d Cir. 1982), used a product (an industrial damper) manufactured by the plaintiff, Arrow, reduced it slightly, affixed its own identifying marks, and represented to a customer that the product was its own. *Id.* at 412, 415. The court held that this activity constituted "affixing" a "false designation of origin" in violation of the Lanham Act. *Id.* at 415. The designation was false because Arrow was the true manufacturer of the product, and by affixing its name, Richards misappropriated Arrow's manufacturing talents. *Id.; see also Roho,* 902 F.2d at 359 ("[t]raditional and reverse palming off activities have both been recognized as wrongful because they involve attempts to misappropriate another's talents"). This was true even though Richards had modified the product slightly. *Arrow,* 678 F.2d at 415.

Reverse passing off as applied to a written work involves somewhat different concepts. In the context of written works,

the Lanham Act may be used to prevent "the misappropriation of credit properly belonging to the original creator" of the work. *Restatement* § 5, cmt. (c); *see also* 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* ("*Nimmer on Copyright*") § 8.21[E] (1994) (an author may claim violation of section 43(a) if his work is published without his name). In this context, the Lanham Act prohibits not only, as Landoll suggests, the relabeling of a printed work, as by tearing the cover off a book and selling it with a false cover, but also the reproduction of a work with a false representation as to its creator. The misappropriation is of the artistic talent required to create the work, not of the manufacturing talent required for publication.

■ Landoll asserts that it cannot be held liable for copying Waldman's books because, at the time Waldman and Playmore sought the preliminary injunction, Waldman had not registered its copyright. This contention, however, misconstrues the relation between copyright law and the Lanham Act. A claim of reverse passing off is separate and distinct from a claim of copyright infringement. *Dodd v. Fort Smith Special School District No. 100,* 666 F.Supp. 1278 (W.D.Ark.1987), is illustrative. In that case, a school teacher and her students had written a biography of their school's namesake, but had never affixed a copyright notice to the book or registered with the Copyright Office. *Id.* at 1279–82. Another employee of the school had the book published designating the employee as the author and giving no credit to the teacher and only an acknowledgement to the students for "compiling" the work. *Id.* at 1281–82. The court held that although the teacher and the students had no copyright claim, they had a valid Lanham Act claim under section 43(a) for false designation of origin. *Id.* at 1284–85. This reasoning is sound because the Copyright Act and the Lanham Act address different harms. Through a copyright infringement action, a copyright owner may control who publishes, sells or otherwise uses a work. Through a Lanham Act action, an author may ensure that his or her name is associated with a work when the work is used.

Landoll also asserts that it has not falsely designated the origin of its books because, it contends, two written works can have the same origin only when the two works are identical. Landoll bases its claim on a line of Ninth Circuit cases holding that a claim of reverse passing off in the context of written work requires that one work be a "bodily appropriation" of the other. *See Cleary v. News Corp.,* 30 F.3d 1255, 1261 (9th Cir. 1994); *Shaw v. Lindheim,* 919 F.2d 1353, 1364 (9th Cir.1990). The Ninth Circuit's conclusion, however, was based not on an analysis of what constituted a "false designation of origin" but instead on the Ninth Circuit's determination that only bodily appropriation would create a likelihood of consumer confusion. *Cleary,* 30 F.3d at 1261; *Shaw,* 919 F.2d at 1364. Consumer confusion is a separate Lanham Act requirement which we will address below, and does not bear on our immediate inquiry into what makes a designation "false."

Whether Landoll falsely designated the origin of its books is a particularly difficult question in light of two circumstances in this case (1) the underlying classic books are in the public domain, and (2) the Landoll and Waldman books are not identical. Thus, we face two questions: (1) Given that the underlying works are in the public domain and that Waldman's books are merely adaptations of the originals, did Waldman add enough of its own work to the underlying works so that failure to credit Waldman may be considered "false designation of origin"? and (2) Given that the subsequent Landoll books are not identical to the Waldman books, are they nevertheless similar enough so that Landoll's failure to credit Waldman constitutes false designation of origin? In pursuing these two inquiries, we find it appropriate to look for guidance to the law of copyright. *See, e.g., King v. Innovation Books,* 976 F.2d 824, 829–30 (2d Cir.1992) (borrowing from copyright concepts to construe Lanham Act claim).

1. *Are Waldman's books original enough to constitute an "origin" which may be "falsely designated"?*

Copyright law defines at what point a work becomes an original creation and who should

be considered its creator. It is fair to say that it would constitute a false designation of origin to publish without attribution to its author a work that is original enough to deserve copyright protection. Therefore, in order to evaluate Waldman's claim, we must determine whether the Waldman books are original works.

■ Under the Copyright Act, copyright protection subsists only in "original works of authorship." 17 U.S.C. § 102(a) (Supp. II 1990). Even if a work is completely identical to a prior work, it may be considered original if it is not copied from the prior work but is rather the product of an independent effort by the author. 1 *Nimmer on Copyright* § 2.01[A] (citing *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090 (2d Cir.1977)).

■ The Waldman books are adaptations of classic novels and hence are what are termed "derivative works" in copyright law, meaning that they are adaptations of existing works. Section 101 of the Copyright Act defines a derivative work as:

a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101 (1988). In the case of a derivative work based on an underlying work that is in the public domain, only the material added to the underlying work is protected by copyright. 1 *Nimmer on Copyright* § 3.07[C].

■ A derivative work is copyrightable if it is sufficiently original.[4] 1 *Nimmer on Copyright* § 3.03. The law requires more than a modicum of originality. This has been interpreted to require a distinguishable vari-

ation that is more than merely trivial. *L. Batlin & Son, Inc. v. Snyder,* 536 F.2d 486 (2d Cir.) (en banc) (requiring some substantial, not just a trivial, variation), *cert. denied,* 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976). As we said in *Batlin:*

Originality is ... distinguished from novelty; there must be independent creation, but it need not be invention in the sense of striking uniqueness, ingeniousness, or novelty, since the Constitution differentiates "authors" and their "writings" from "inventors" and their "discoveries." Originality means that the work owes its creation to the author and this in turn means that the work must not consist of actual copying.

*Id.* at 490 (citations omitted).

■ The test of originality is concededly a low threshold. By this definition, the Waldman books are original works. The selection of which episodes in the classics to include in the books, the redrafting of the text to tailor the books to young readers and the illustrations add more than a quantum of originality to the original works.

2. *Are Landoll's books similar enough to Waldman's so that Landoll's failure to credit Waldman constitutes false designation of origin?*

Having determined that the author or authors of the Waldman books deserve attribution when their works are used, we must determine whether the Landoll books are similar enough to Waldman's to create an inference that Landoll has copied Waldman's books and that Landoll's failure to credit Waldman constitutes a false designation of origin. The district court found that this was the case. The court held that the similarities between the structure, texts and illustrations of the books "compel the inference that the Landoll adaptations are copies of the Waldman adaptations, with the minimal changes intended to disguise the copying." *Waldman,* 848 F.Supp. at 502–03. The district court concluded that Landoll falsely desig-

4. To be copyrightable, a derivative work must also not infringe the original work, a requirement that is not relevant to the discussion here because the underlying works are in the public domain.

nated the origin of its books by placing the Landoll name on what was essentially a Waldman product.[5]

The standard of comparison used by the district court was essentially the "substantial similarity" standard used to show copyright infringement. In order to prove infringement of a copyright, the owner of the copyright must show that the protected work was copied. *Kregos v. Associated Press,* 3 F.3d 656, 662 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994). "Since direct evidence of copying is rarely possible, copying is generally established by showing (a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectible material in the two works." *Id.*

We find this standard an appropriate one for determining false designation of origin under the Lanham Act. A second work can be said to have the same origin as a first if the second was copied from the first. When the two works are identical, copying can almost always be assumed. When the works are somewhat different, copying can be established as it is in copyright infringement.

The district court did not abuse its discretion, or make an erroneous finding, let alone a clearly erroneous one, in finding that the Landoll books were copied from the Waldman books and thus that the books have a common origin. First, the Waldman books have been on the market since 1979, giving the public, and especially any publisher of children's books, ample access to them. Counsel for Landoll, in addition, represented to the district court that Peter Haddock distributed the Waldman Great Illustrated Classics before he created what are now the Landoll books. (Transcript of Hearing of March 31, 1994, at p. 20). Second, the district court's finding that the Landoll books are similar to the Waldman books in structure, text and illustration is not challenged on appeal. The similarities between the books extend beyond the underlying story which is in the public domain. In creating the Waldman adaptations, the authors had to choose which episodes to summarize, which scenes to illustrate, and what chapter headings to use. All these aspects of the Waldman books are original to the adaptations and are not taken from the underlying works. The Landoll books are substantially similar to the Waldman books in all these respects. Thus, absent a showing of independent creation, the inference is that Landoll falsely designated the origin of its books by indicating its own authors as the source of the adaptations.

The district court ended its inquiry here. It concluded that Waldman and Playmore had shown a likelihood of success on their claim of reverse passing off because "Landoll is selling the Waldman products as Landoll's own and under Landoll's name." *Waldman,* 848 F.Supp. at 503. An additional issue, however, presents itself. False designation of origin, as applied to written work, deals with false designation of the creator of the work; the "origin" of the work is its author. The court did not answer the question who the author or authors of the Waldman books were, and hence, who should be credited on the Landoll books.

The Supreme Court, interpreting section 201(a) of the Copyright Act, has held that "the author is the party who actually created the work." *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 737, 109 S.Ct. 2166, 2171, 104 L.Ed.2d 811 (1989). Section 201(b) of the Copyright Act provides further: "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title...." 17 U.S.C. 201(b) (1988). A work made for hire is defined as:

(1) a work prepared by an employee within the scope of his or her employment; or

(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as

---

5. Landoll, relying on *Kregos v. Associated Press,* 937 F.2d 700, 711 (2d Cir.1991), argues that the District Court wrongly relied on Landoll's use of a copyright symbol in reaching its decision that Landoll falsely designated the origin of its books. We do not, however, read the District Court's opinion as relying on such reasoning.

a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101 (1988). If the books were "made for hire," then Waldman is the source of the works, and should be credited when the works are used. If the books were not "made for hire," then the writers and illustrators should be credited.

The district court found that "Waldman contracted with writers to adapt the text and artists to do the illustrations." *Waldman*, 848 F.Supp. at 499. Mr. Hanft, an employee of Waldman, testified at the hearing in the district court that he had rewritten a classic book in the scope of his employment, although not one of the books at issue.

It is unclear from the record whether, as required by part one of the statute, some or all of the books were written by Waldman employees within the scope of their employment. As this determination is essential to crafting appropriate preliminary relief, *see* Section II, and requires further findings of fact, this issue is remanded to the district court for further consideration.[6]

### B. *Consumer Confusion*

■ The next issue is whether Waldman and Playmore have shown a likelihood of consumer confusion. The district court found that consumers will be led to believe falsely that Landoll, and the writers and illustrators credited in the Landoll books, are the source of the adaptations.

As mentioned above, the Ninth Circuit has held that in the context of reverse passing off, consumer confusion is caused only by the false designation of works that are "bodily appropriations" of the originals. *See Cleary v. News Corp.*, 30 F.3d 1255, 1261 (9th Cir. 1994); *Shaw v. Lindheim*, 919 F.2d 1353, 1364 (9th Cir.1990). We see no reason for such a bright-line rule. We concur with the district court's conclusion that consumers are likely to be confused by Landoll's misrepresentation as to the source of its books, even though the Landoll books are "substantially similar" to but not "bodily appropriations" of the Waldman books.[7]

### C. *Harm*

■ We must next consider whether Waldman and Playmore have shown that they have been, and will continue to be, harmed by Landoll's false designation of its books' origin. Section 43(a) provides that a civil action may be brought by "any person who believes he or she is or is likely to be damaged by [a violation of this section]." 15 U.S.C. § 1125(a)(1). "[T]his court has limited standing to assert a section 43 claim to a 'purely commercial class' of plaintiffs." *Berni v. International Gourmet Restaurants, Inc.*, 838 F.2d 642, 648 (2d Cir.1988). In

---

**6.** If the Waldman books are not works for hire, the issue then arises whether Waldman and Playmore have standing to bring a Lanham Act claim against Landoll. The Lanham Act provides that an action may be brought by any person who is damaged by a violation of the Act. It states in relevant part:

Any person who [violates the Act] shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (Supp. IV 1992). This Circuit has limited plaintiffs to parties with a reasonable commercial interest to protect. *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 125 (2d Cir.1984). We leave the issue open, but if the district court on remand finds that Waldman is not the author of the Waldman books, it should then determine whether Waldman and Playmore were damaged or reasonably believe they were damaged by Landoll's false

representation as to the author of its books, and therefore have or do not have standing to sue in this case.

**7.** Landoll asserts as well that the district court applied an improper legal standard by failing to determine whether the structure and text of the Waldman books had attained a secondary meaning. That standard is not appropriate in this case. It is used in typical passing-off cases involving trademarks or trade dress which are not inherently distinctive; in such a case, a plaintiff, in order to prove consumer confusion, must generally show that the copied features of its product have attained a secondary meaning. *Restatement* § 13 (Tent. Draft No. 2 1990). In this case, Waldman and Playmore allege the opposite. They contend that because the text and structure of their books do not have a secondary meaning, consumers will believe that the Landoll books actually originated with Landoll, when in fact they were created by Waldman.

order for a preliminary injunction to issue, the moving party must show irreparable harm. *Polymer Technology Corp. v. Mimran,* 37 F.3d 74, 77 (2d Cir.1994).

In *Smith v. Montoro,* 648 F.2d 602 (9th Cir.1981), the Ninth Circuit discussed the gravamen of the injury in a reverse passing off case:

> [T]he originator of the misidentified product is involuntarily deprived of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product.

*Id.* at 607. This passage describes an injury to the "originator" of the misidentified product. *The Restatement of Unfair Competition* describes the potential harm more generally:

> the misrepresentation may be likely to induce prospective purchasers to buy additional goods or services from the actor, resulting in a diversion of trade from the party seeking relief.

*Restatement* § 5, cmt. (c).

The district court held that Waldman and Playmore were both economically harmed by Landoll. The court found that "[i]t is reasonable to assume that most of the Landoll adaptations sold at retail would have been Playmore sales *if the Landoll alternative had not been available." Waldman,* 848 F.Supp. at 504 (emphasis added). This finding assumes that Waldman and Playmore could enjoin Landoll from publishing its books altogether by means of a section 43(a) action. As we will discuss in Section II below, if an injunction is appropriate in this case, it could not prohibit Landoll from publishing the adapted classics; it could only prohibit them from publishing the books with a false representation as to their source. Thus, we conclude that the district court erred in determining whether Waldman and Playmore were harmed by the presence of Landoll in

the market. The court should have determined instead whether they were economically harmed by Landoll's false designation and whether, to meet the requirement for a preliminary injunction, continuing harm would be irreparable. Because this determination requires further fact finding, this issue is remanded to the district court.

## II. *The Scope of the Injunction*

 Injunctive relief should be narrowly tailored to fit specific legal violations. *Society For Good Will To Retarded Children, Inc. v. Cuomo,* 737 F.2d 1239, 1251 (2d Cir.1984). Accordingly, an injunction should not impose unnecessary burdens on lawful activity. *Id.*

 The injunction issued by the district court prohibits Landoll from publishing and selling any books that are substantially similar to Waldman's Great Illustrated Classics. Even if an injunction is warranted, which depends upon whether Waldman and Playmore can prove an irreparable economic injury, the scope of the district court's injunction is too broad.

At most, Waldman and Playmore can enjoin only Landoll's acts that violate section 43(a). In this case, Landoll's false designation of the origin of its books is the act potentially violative of the Lanham Act. Therefore, Waldman and Playmore are only entitled to enjoin Landoll from falsely representing the source of its books. Landoll may in any case continue to publish its books as long as it correctly credits Waldman's and Playmore's authors.[8]

The issue of whether Landoll can reproduce the Waldman books at all is a copyright issue. At the time Waldman and Playmore moved for the preliminary injunction, Waldman had not registered its copyright, and therefore could not seek an injunction based

8. It is worth noting that the attribution must be accurate and not misleading to satisfy the requirements of section 43(a). *See King v. Innovation Books,* 976 F.2d 824, 828 (2d Cir.1992); *Follett v. New American Library, Inc.,* 497 F.Supp. 304, 311–13 (S.D.N.Y.1980). The credit to the author or authors of the Waldman books should reflect that they rewrote a classic book authored by someone else.

As discussed in Section I.A, this case is remanded for the District Court to determine who the author or authors are of the Waldman adaptations. It may be the case, because of the "work for hire" doctrine, that Waldman is the author.

on copyright infringement. It has now registered its copyright and has amended its complaint to include a cause of action for copyright infringement. Because this was done after this appeal was filed, we have not considered the copyright claim in this appeal. The district court may consider on remand whether the parties' positions have changed now that Waldman has registered.

### Conclusion

Landoll's publication and sale of books substantially similar to those published by Waldman, designating its own authors as the source of the work instead of designating the author or authors of the Waldman books, constitutes a false designation of origin under the Lanham Act. The case is remanded for a finding of whether Waldman and Playmore can show irreparable economic injury as a result of the false designations, and, if appropriate, for the refashioning of an injunction in accordance with this opinion.

Preliminary injunction vacated, and case remanded.