86 F.3d 3
 39 U.S.P.Q.2d 1136
 WARNER-LAMBERT COMPANY and Parke Davis & Co., Limited,
Plaintiffs-Appellants-Cross-Appellees,
v.
NORTHSIDE DEVELOPMENT CORPORATION, Northside Development
Company, Inc., and Joseph Dekama, Defendants,
Quality King Distributors, Inc. and Northside Associates,
Inc., Defendants-Appellees-Cross-Appellants.
 Nos. 1715, 1825, Dockets 96-7105, 96-7189.
 United States Court of Appeals,
Second Circuit.
 Argued April 1, 1996.
Decided May 29, 1996.
 
 Peter Buscemi, Morgan, Lewis & Bockius, Washington, D.C. (Michael F. Clayton, Morgan, Lewis & Bockius, Washington, D.C., of counsel; John J. O'Donnell, Morgan, Lewis & Bockius, New York City; John N. O'Shea, Warner-Lambert Company, Morris Plains, New Jersey, of counsel), for Plaintiffs-Appellants-Cross-Appellees.
 John B. Rosenquest III, Edwards & Angell, Providence, Rhode Island (Alfred R. Paliani, Edwards & Angell, Providence, Rhode Island; Dennis M. Apfel, Miller & Apfel, Deer Park, New York, of counsel), for Defendants-Appellees-Cross-Appellants.
 Before: WINTER, McLAUGHLIN, and CALABRESI, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Warner-Lambert Company, the maker of HALLS cough drops, and Parke Davis & Company, a wholly owned subsidiary of Warner-Lambert (collectively "Warner-Lambert"), commenced this trademark infringement action pursuant to 15 U.S.C. § 1051 et seq. alleging that Quality King Distributors and Northside Associates (collectively "Quality King") knowingly sold, and intend to continue to sell, HALLS cough drops that fail to comply with Warner-Lambert's quality control standards for freshness. On Warner-Lambert's motion for a preliminary injunction, Judge Scheindlin ordered Quality King not to sell any of the HALLS cough drops unless marked with an accurate shelf life date. Judge Scheindlin refused, however, to enjoin Quality King from distributing any of the accurately marked cough drops for which the freshness date has passed while this litigation is pending. Both parties appeal. We reverse in part and order entry of the requested preliminary injunction in full.
 
 BACKGROUND
 
 2
 Warner-Lambert manufactures and distributes cough drops and cough suppressant tablets under the registered HALLS trademark. Quality King is a wholesaler of over-the-counter drugs and health and beauty aids, including HALLS products. According to Warner-Lambert's research, physical deterioration of a HALLS brand cough drop begins to occur by the twenty-fourth month after production. Under normal storage conditions, however, HALLS cough drops usually remain of acceptable quality for up to 30 months. In order to prevent consumers from ingesting stale HALLS cough drops, Warner-Lambert has established a shelf life for the product of 24 months from the date of manufacture. This shelf life is based on the assumption that consumers generally exhaust a package of cough drops within six months after the date of purchase. The bottom line, therefore, is that Warner-Lambert wants the product sold to consumers within 24 months after manufacture.
 
 
 3
 Warner-Lambert attempts to enforce this policy through various quality control procedures that include: (i) shipping HALLS within 18 months from the date of manufacture; (ii) marking the shipping cases ("shippers") and display trays contained in the shippers with the shelf life of the product; (iii) informing its wholesale and retail customers about the product shelf life; (iv) sending sales representatives to stores that sell HALLS cough drops to monitor the product's freshness and issuing credits for new HALLS to replace outdated supply; (v) segregating lots manufactured at different times; and (vi) supervising the destruction of outdated product. In addition, a Warner-Lambert representative testified that the company initiates legal action against, or discontinues selling to, customers that refuse to comply with its freshness policy.
 
 
 4
 In September or October of 1995, Warner-Lambert learned that the Jack Eckerd Corporation, owner of a retail drug store chain, had purchased from Quality King large quantities of HALLS cough drops more than 24 months old. The cough drops Eckerd purchased from Quality King were not packaged in the original Warner-Lambert shippers and trays. Instead, they had been repackaged in plain white cardboard trays and in shippers that did not indicate the shelf life of the product. According to a representative of Quality King, Quality King had acquired the HALLS products at a discounted price precisely because the products had a short remaining shelf life and had been repackaged to conceal this fact.
 
 
 5
 Warner-Lambert brought this action against Quality King seeking injunctive relief and damages for, inter alia, trademark infringement, unfair competition, and false designation of origin under the Lanham Act, 15 U.S.C. § 1051, et seq. Judge Scheindlin preliminarily enjoined Quality King from shipping HALLS brand cough drops in packaging that omits an accurate freshness date. However, she denied Warner-Lambert's request to enjoin Quality King from distributing any HALLS cough drops for which the freshness date has passed. She denied this relief on the ground that Warner-Lambert could have adopted more stringent quality control measures that would have effectively prevented any ultimate consumers from purchasing stale product.
 
 DISCUSSION
 
 6
 To obtain a preliminary injunction Warner-Lambert must demonstrate: "(i) irreparable harm and (ii) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly" in Warner-Lambert's favor. See Jackson Dairy v. H.P. Hood & Sons, 596 F.2d 70, 72 (2d Cir.1979). We may reverse a district court's decision to grant or deny a preliminary injunction only for an abuse of discretion. See Waldman Publishing Corp. v. Landoll, Inc., 43 F.3d 775, 780 (2d Cir.1994). A district court may abuse its discretion by applying an incorrect legal standard or by basing the preliminary injunction on a clearly erroneous finding of fact. Id.
 
 
 7
 An action for trademark infringement arises where "[a]ny person ... without the consent of the registrant ... use[s] in commerce any ... registered mark in connection with the sale ... of any goods ... [and] such use is likely to cause confusion...." 15 U.S.C. § 1114(1)(a). Distribution of a product that does not meet the trademark holder's quality control standards may result in the devaluation of the mark by tarnishing its image. If so, the non-conforming product is deemed for Lanham Act purposes not to be the genuine product of the holder, and its distribution constitutes trademark infringement. Polymer Technology Corp. v. Mimran, 37 F.3d 74, 78 (2d Cir.1994); El Greco Leather Prods. Co. v. Shoe World, Inc., 806 F.2d 392, 395 (2d Cir.1986) ("One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark."), cert. denied, 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 34 (1987).
 
 
 8
 Quality King wants to continue distributing HALLS cough drops for which Warner-Lambert's 24-month freshness date has passed. Quality King concedes that the cough drops are more than 24 months old but contends that because Warner-Lambert's procedures do not preclude the sale of some stale product to consumers, Quality King's distribution of stale HALLS cannot constitute trademark infringement.
 
 
 9
 As noted, Warner-Lambert employs a variety of procedures aimed at preventing stale cough drops from reaching the ultimate consumer. However, the district court agreed with Quality King that Warner-Lambert's procedures were so inadequate as to justify denial of the full preliminary relief requested. The district court noted that if Warner-Lambert had wanted to ensure that no consumers would purchase HALLS cough drops past their freshness date, it could have imposed contractual conditions on the wholesalers and retailers and could have printed expiration dates directly on the individual packages of cough drops.
 
 
 10
 It is undeniable that more stringent measures of insuring freshness are available to Warner-Lambert. However, to be entitled to relief, a trademark holder is not required to adopt the most stringent quality control procedures available. The trademark holder must demonstrate only that: (i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark. See Polymer Technology, 37 F.3d at 78-79 (trademark holder that failed to comply with its procedures not entitled to preliminary injunction preventing sale of goods that do not meet trademark holder's quality standards); Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., 988 F.2d 587, 591 (5th Cir.1993) (where beauty salons that sold hair care products did not always provide consultation with each sale, sale of same products in drug store without consultation could not constitute trademark infringement).
 
 
 11
 The purposes of the Lanham Act would not be fulfilled by requiring trademark holders to establish quality control procedures that prevent virtually all departures from established norms before affording relief against sellers who fail to abide by those norms. A trademark holder is entitled, without losing its right to protect what value the mark has, to make a business judgment that additional quality control measures would add less value to the mark than their cost. Even if some non-conforming products survive a mark holder's quality control procedures and enter the marketplace, the sale of additional non-conforming products could further devalue the trademark. Cf. Cullman Ventures, Inc. v. Columbian Art Works, Inc., 717 F.Supp. 96, 126-27 (S.D.N.Y.1989) (existence of other infringers, and thus other non-genuine goods, does not prevent trademark owner from seeking relief from one infringer); Elizabeth Taylor Cosmetics Co. v. Annick Goutal, S.A.R.L., 673 F.Supp. 1238, 1248 (S.D.N.Y.1987) (trademark owner not required to act against every infringing use for mark to retain protectability).
 
 
 12
 This is not to say that the effectiveness of a trademark holder's quality control procedures is irrelevant to the availability of relief. A company that avails itself of wholly effective procedures will generally be entitled to relief against any measurable sales of non-conforming goods. Sales of non-conforming goods will in those circumstances place poor quality goods where none were before and necessarily devalue the mark associated with them. A company with less effective quality control standards that predictably result in some sales of non-conforming goods will have a mark that reflects a value based on the presence in the marketplace of those goods. To be entitled to relief against a later seller of non-conforming goods, such a trademark holder must show that the later sales measurably diminish the value of an already partially devalued mark.
 
 
 13
 We turn now to the application of the test described above. Warner-Lambert has instituted substantial procedures to limit the sale of stale product to consumers. It does not distribute cough drops that are beyond 18 months old, marks shipping cases and trays with a shelf life date, informs wholesalers and retailers of the product shelf life, monitors inventory in stores, destroys outdated product, does not mix lots of cough drops, and litigates where appropriate.
 
 
 14
 The district court did not find these procedures to be pretextual. This issue is, therefore, at least a fair ground for litigation and perhaps one likely to be resolved against Quality King.
 
 
 15
 Warner-Lambert complies with its stated procedures. The only evidence of non-compliance involves a contract with Collegiate Marketing to distribute free samples on college campuses. Under the terms of the Collegiate contract, Warner-Lambert sold boxes of HALLS containing multiple flavors. These sales involved multiple lots that may have been manufactured at different times. This violated Warner-Lambert's policy of not mixing lots, which facilitates adherence to the no post-18-month distribution rule. The district court found the Collegiate Marketing contract to be irrelevant, however, because all of the cough drops in question were from lots that, at the time of shipping, were less than 18 months old and the contract with Collegiate explicitly required that all the bags be distributed during the fall semester, well before the 24-month shelf life would expire.
 
 
 16
 Quality King argues that its intended sales cannot devalue Warner-Lambert's mark because they add only a fraction to the already stale HALLS cough drops already in the market.[1] We believe this issue is a fair ground for litigation at trial. Quality King sells health and beauty aids only in Florida. The sale of the more than 300,000 bags of stale HALLS cough drops in Quality King's possession would significantly increase the amount of stale product in this area. Moreover, Quality King's sales to chain retailers such as Eckerd could concentrate the stale product in particular chains in Florida. A concentration of stale product in certain stores in certain areas could do more damage to the value of a trademark than could scattered sales in similar numbers nationwide. Bad experiences by concentrations of consumers can lead to communications that mutually reinforce negative impressions about a mark and cause substantial numbers of consumers and chains to cease purchasing products using the mark. We cannot, therefore, conclude that injunctive relief should be denied on the ground that Quality King's sales will not devalue the HALLS mark.
 
 
 17
 We turn now to the decisive issue, the standards for injunctive relief. The extent of loss of consumer goodwill that Warner-Lambert may suffer from the sale of some 300,000 bags of non-conforming cough drops will be unquantifiable at trial. It is thus not accurately compensable by monetary damages. This satisfies the irreparable injury requirement. Turning to the balance of hardships, the only harm to Quality King from the full preliminary injunction is the loss of profits on sales. This amount is quantifiable, and Warner-Lambert can compensate Quality King for that loss after trial if the injunction is found to have been granted in error.
 
 
 18
 The district court applied an erroneous legal standard in denying full injunctive relief on the ground that Warner-Lambert did not adopt the most stringent quality control procedures available. This was an abuse of discretion. Warner-Lambert established that it would suffer irreparable harm without the protection of the full preliminary injunction. Because there are, as noted, fair grounds for litigation and because the balance of hardships clearly favors Warner-Lambert, Quality King should be preliminarily enjoined from selling any HALLS cough drops that are more than 24 months old. In view of our disposition of the appeal, we need not address the question raised on the cross-appeal.
 
 
 
 [1]
 Quality King hired a private investigator who found that six out of 18 stores he visited were selling stale HALLS cough drops. The district court gave substantial weight to this fact in denying Warner-Lambert's request that Quality King be enjoined from selling any stale product. However, this evidence does not establish what percentage of HALLS cough drops were stale in the stores in question. A professional study performed by an independent audit firm found that only 4.4% of HALLS available in the marketplace generally were past their freshness date. This issue is also a fair ground for litigation