303 F.Supp.2d 974 (2002)
MIST-ON SYSTEMS, INC., Plaintiff,
v.
GILLEY'S EUROPEAN TAN SPA and Dan Gilley, Defendants.
No. 02-C4038-C.
United States District Court, W.D. Wisconsin.
May 2, 2002.
*975 Mary Beth Peranteau, Milwaukee, WI, for plaintiff.
John Skilton, Heller, Ehrman, White & McAuliffe, Madison, WI, for defendants.

OPINION AND ORDER
CRABB, District Judge.
Plaintiff Mist-On Systems, Inc. brings this action against defendants Gilley's European Tan Spa and Dan Gilley for copyright infringement under 17 U.S.C. § 501, contributory copyright infringement and vicarious liability, unfair competition under *976 Wisconsin common law and false designation of origin and false representations under the Lanham Act, 15 U.S.C. § 1125(a). Plaintiff contends that defendants infringed plaintiffs exclusive rights under the Copyright Act by preparing and displaying on their web page an unauthorized Frequently Asked Questions page that mirrors the Frequently Asked Questions page found on plaintiffs web page. Plaintiff alleges that it suffered irreparable damage and sustained lost profits as a result of the infringement. Plaintiff seeks monetary relief and a permanent injunction restraining defendants from engaging in further acts in violation of the copyright laws.
This court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1338. Because the state claims appear to be "so related to claims in the action ... that they form part of the same case or controversy," supplemental jurisdiction attaches under 28 U.S.C. § 1367(a). The case is before the court on defendants' motion for summary judgment.
Because I find that no reasonable person could conclude that the two Frequently Asked Questions pages are similar enough to support a conclusion that defendants copied plaintiff's original expression, defendants' motion for summary judgment on plaintiffs copyright claims will be granted. In addition, because I find that plaintiff has failed to adduce facts beyond those underlying its copyright infringement claim that would support either the state law unfair competition claims or the false designation of origin and unfair competition claims under the Lanham Act, defendants' motion for summary judgment on these claims will be granted.
From the parties' proposed findings of fact and from the record, I find that the following material facts are not in dispute.

UNDISPUTED FACTS
This case presents few facts for the court to consider. The web page material for which the plaintiff claims a copyright is attached to the complaint as Exhibits A and B. The defendants' web page material that the plaintiff claims infringes its copyright is attached to the complaint as Exhibit C. Copies of the web pages have been attached to this opinion, and I incorporate them as undisputed facts.

OPINION

I. SUMMARY JUDGMENT STANDARDS
To prevail on a motion for summary judgment, the moving party must show that even when all inferences are drawn in the light most favorable to the non-moving party, there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party succeeds in showing the absence of a genuine issue as to any material fact, the opposing party cannot rest on the pleadings but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment may be awarded against the non-moving party only if the court concludes that a reasonable jury could not find for that party on the basis of the facts before it. Hayden v. La-Z-Boy Chair Co., 9 F.3d 617, 618 (7th Cir.1993).

II. COPYRIGHT INFRINGEMENT
To succeed on its copyright infringement claim, plaintiff must show: 1) ownership of a valid copyright and 2) copying *977 of constituent elements of the work that are original. Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 507 (7th Cir.1994). Plaintiff submitted copies of its application for registration from the United States Register of Copyrights. Submission of an application for registration fulfills the first requirement of an infringement action. See 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.16[B][1][a], n. 39. Defendants do not dispute that plaintiff's web page is protected by a valid copyright for purposes of this motion.
Unauthorized copying can be established when the plaintiff can show both that "`defendant had access to the copyrighted work" and, that "`the accused work is substantially similar to the copyrighted work.'" Wildlife Express, 18 F.3d at 508 (citing Atari, Inc. v. North American Philips Consumer Electronics Corp., 672 F.2d 607, 614 (7th Cir.1982)). Defendants have not disputed that they had access to the web page. See, e.g., Robert R. Jones Associates v. Nino Homes, 858 F.2d 274, 277 (6th Cir.1988) (finding access when defendant had opportunity to view protected item). In this case, the issue concerns the second part of the test, whether defendants copied anything in plaintiffs web page that is protected as an original work. Feist, 499 U.S. at 361, 111 S.Ct. 1282. "Originality remains the sine qua non of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author." Id. at 348, 111 S.Ct. 1282. Generally, ideas themselves are not protected, only the expression of those ideas. Harper & Row Publishers Inc. v. Nation Enterprises., 471 U.S. 539, 556, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985). The question is whether defendants' web page copied protected expression from plaintiffs web-site or "merely used the same underlying ideas." Francorp. Inc., v. Siebert, 210 F.Supp.2d 961, 964-65 (N.D.Ill.2001).
If the similarities between the accused work and the original are insufficient to prove copying, the plaintiff cannot prevail. Wildlife Express, 18 F.3d at 508. Courts in this circuit may make a "side by side" and "ocular" comparison to determine whether two works are substantially similar. Wildlife Express, 18 F.3d at 506 n. 1. Using this "side by side" method, a court will determine substantial similarity using the "ordinary observer" test, that is, "whether the accused work is so similar to the plaintiffs work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiffs protectible expression by taking material of substance and value." Atari, Inc. v. North American Philips Consumer Elecs. Corp., 672 F.2d 607, 614 (7th Cir. 1982) (emphasis added). Put another way, "two works are substantially similar if the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'" Wildlife Express, 18 F.3d at 509 (quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir.1960)).
Plaintiffs web page, entitled "Mist-On Tanning Frequently Asked Questions," consists of a single page of nineteen questions about the Mist-On Tanning process and various other helpful hints. Defendants' web page, entitled Gilley's European Tan Spa "FAQ's Sunless Express Spray Spa," consists of three pages of operating instructions and sixteen questions about the Sunless Express Spray Spa. When the two works are compared side-by-side, similarities are evident. Both web pages utilize the Frequently Asked Questions format. Both web pages use common words to begin each question, *978 such as, "how," "can," "is," "what" and "will." In addition, because both web pages focus on a spray-on form of sunless tanning, they provide similar information. These superficial similarities fall short of proving copying because they are not the equivalent of "copying of constituent elements of the work that are original." Feist, 499 U.S. at 361, 111 S.Ct. 1282. As the court explained in Feist, "[n]o matter how much original authorship the work displays, the facts and ideas it exposes are free for the taking ... The very same facts and ideas may be divorced from the context imposed by the author, and restated or reshuffled by second comers, even if the author was the first to discover the fact or to propose the ideas." Feist, 499 U.S. at 349, 111 S.Ct. 1282 (citation omitted); see also Mazer v. Stein, 347 U.S. 201, 217, 74 S.Ct. 460, 98 L.Ed. 630 (1954) ("Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea-not the idea itself"). Further, under the doctrine of scenes a faire, elements of an original work are not protected if the "'common idea is only capable of expression in more or less stereotyped form.'" Atari, 672 F.2d at 616 (quoting 3 Nimmer, § 13.0316[A][1], at 13-28).
It follows that a business cannot copyright a Frequently Asked Questions page as such or copyright words or phrases commonly used to assemble any given Frequently Asked Questions page. The format of a Frequently Asked Questions page is a common idea in our society; the elements of a Frequently Asked Questions page (a list of questions beginning with common words) are stereotypical. Some additional similarity beyond generic formatting is necessary to establish infringement. See e.g., Atari, 672 F.2d at 616-618 (although "idea' of game, along with maze design and scoring table, was not protected from copying, expression of central figure as "gobbler" and pursuit figures as "ghost monsters" distinguished PAMAN from conceptually similar video games and was protected).
Plaintiff agrees that a business cannot copyright the idea of a Frequently Asked Questions page. However, plaintiff argues that a Frequently Asked Questions page of nearly the same length, with similarly worded questions and answers, given in the same order and on the same subject matter, does infringe upon its copyrightable material. (To support its allegations, plaintiff created Exhibit E (attached to plaintiffs complaint), which purports to demonstrate the similarity of the wording and order of the various questions asked on the respective web pages. However, in order to get the two web pages to "match up," plaintiff had to dissect defendants' answers into separate parts and rearrange them into an order that is different from that on defendants' actual web page. This in itself is enough to defeat plaintiffs contention that defendants' Frequently Asked Questions and Answers are in the "same order" as plaintiffs.)
A side-by-side comparison of the parties' undoctored Frequently Asked Questions pages clearly reveals that the sequence, the wording and the number of the questions are different from each other. Five of defendants' questions are entirely unique to their page; questions of a similar nature do not even appear on the plaintiffs web page. Seven of plaintiffs questions are entirely unique to its page. The sequence of the questions is entirely different; not one question falls into the same sequence in a side-by side comparison.
Furthermore, the layout of the web page is different. Plaintiffs web page consists of one page of questions laid out in three columns. Each question is in bold print, with the answer printed in regular type below the question. Plaintiffs web page in Exhibit A has a small beach icon in the top *979 right corner. Plaintiffs subsequent web page depicted in Exhibit B has endorsements for Dr. Tom Laughlin at the top, no small beach icon, and a picture of a woman admiring her tan in the mirror on the bottom right of the web page. In contrast, defendants' web page consists of three pages. The first page contains a large, colorful "Gilley's Tan Spa" heading. The web page displays both an icon depicting a couple apparently relaxing in the shade and what appears to be a Sunless Express Spray Spa unit. The Frequently Asked Questions section begins in the lower right corner of the first page and continues in one column for two more pages. Each question is preceded by a bullet point and is printed in an italicized type. The answers are found directly below the questions. Next to the defendants' Frequently Asked Questions are instructions for using the Sunless Express Spray Spa and other information about trying the spa or purchasing a unit.
There is no truth to plaintiffs assertion that many of defendants' questions and answers are "nearly identical" to plaintiffs. For example, plaintiff points out that both web pages contain a question about whether the formula is safe. Defendants' web page reads, "Is it safe for my body?"; plaintiffs website reads, "Is it safe?" The answers, however, are in no way similar. Defendants' question is answered with one sentence:
There are no ingredients in this solution that can be harmful to the body. Plaintiffs question is answered with a small paragraph:
The Mist-On tan is a cosmetic. It uses the same basic sunless tanning components as the products being promoted as a smart alternative to UV-exposure. The main unique feature of this tan is the way it is applied an automated misting process.
The answers are similar only in that they both address the topic of the safety of the tanning product. Likewise, both parties address the topic of the odor of the tanning product; again, however, the answers are different. Plaintiffs web page reads, "Does it have the starchy odor of other sunless tanners?" and provides the following answer:
The starchy odor often associated with sunless tanning is due to DHA reacting with your skin. Some people's bodies seem to absorb a starchy odor, and other people seem to shed it. Unfortunately, the odor may be observed in this case since we use DHA just like other sunless tanning products. Ask the staff for tips minimizing the odor.
In contrast, defendants' web page asks, "Will i[sic] smell after the session?" and provides the following answer:
You may notice a slight odor on your skin a few hours after your session. Some comment that the scent is very pleasant, whereas others feel it is somewhat unpleasant.
These answers are simply too different to allow a reasonable person to conclude that defendants unlawfully appropriated the plaintiffs protected expression. The same goes for the other questions plaintiff has identified on its web page, that it contends defendants have copied. Contrary to plaintiffs contention, there is not one question that is worded identically on the competing web pages. The similarities that plaintiff has pointed out are factual: for example, both processes require towel buffing, and utilize a product made from the same ingredients. As another example, the fact that this form of spray-on tan will last 5 days (a question that plaintiff alleges that defendants have copied) is not original to the plaintiff. Because the Frequently Asked Questions format is not copyrightable and because plaintiff cannot *980 copyright the idea that the spray-on tan will last 5 days (or other facts common to this product), it follows that defendants' questions are not infringing plaintiff's copyright. Any overlap in content between the two web pages does not rise to the level of actionable similarity.
In short, although there are some similarities between the two works, a reasonable person could not conclude that defendants' web page violates plaintiff s copyright by unlawfully appropriating material of substance and value. The similarities between the two pages do not arise from protected expression. Rather, they arise from the parties' use of a common format to address topics common to the subject of tanning booths.
Summary judgment will be granted to defendants on the copyright infringement claim. Because plaintiff's claims for contributory copyright infringement and vicarious liability for copyright infringement rest upon a finding of infringement, summary judgment will be granted to defendants on these claims.

III. PREEMPTION UNDER THE COPYRIGHT ACT
In its fourth claim, plaintiff alleges that defendants' conduct constitutes unlawful, unfair and fraudulent business practices in violation of Wisconsin common law. Pursuant to 17 U.S.C. § 301(a), federal copyright law preempts state law claims that are equivalent to federal copyright claims. The Seventh Circuit has established a two-pronged test to determine whether a state law claim is equivalent to one protected by the Copyright Act. First, the court must find that work in which the right is asserted is fixed in tangible form and comes within the protection of the Copyright Act. Second, the court must find that the state right is equivalent to any of the rights specified in the federal copyright laws. Baltimore Orioles, Inc. v. Major League Baseball Players Assoc., 805 F.2d 663, 674 (7th Cir.1986). There is no dispute that the first prong is satisfied  plaintiff has sued for copyright infringement. See e.g., Goes Lithography Co. v. Banta Corp., 26 F.Supp.2d 1042, 1048 (N.D.Ill.1998). However, to escape preemption, the state law claim must require an additional element that is qualitatively different from the elements necessary for copyright infringement. 17 U.S.C. § 301(b)(3).
Plaintiff alleges that defendants' copying of its Frequently Asked Questions page violates Wisconsin common law. However, plaintiff does not allege any additional facts beyond those asserted to support its copyright claim and it does not distinguish the copyright and state common law claims. Further, plaintiff has not established how the injunctive relief it is requesting under state common law is different from the redress it is seeking under the Copyright Act. In essence, the state common law claims and the claimed injuries arise exclusively from the alleged copying. Section 301(a) prevents states from substituting their own regulatory systems for those of the national government. ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1455 (7th Cir.1996). Without a viable copyright infringement claim, plaintiff does not have a viable claim for unfair competition. Because plaintiffs unfair competition claims merely restate the copyright claims under state law, they are preempted. See e.g., FASA Carp. v. Playmates Toys, Inc., 869 F.Supp. 1334 (N.D.Ill.1994) (finding state law claim of unfair competition preempted because predicated on same conduct underlying copyright counts); Baltimore Orioles, 805 F.2d at 676 (noting § 301(a) preempts equivalent state-law rights in any work with subject matter of copyright whether or not work embodies creativity).

*981 IV. FALSE DESIGNATION OF OIGIN AND UNFAIR COMPETITION UNDER THE LANHAM ACT
Plaintiff's final claim is for false designation of origin and unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). Section 1125(a)(1)(A), as amended, states:
Any person who, on or in connection with any goods or services, ... uses in commerce ... any false designation of origin ... which  is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin ... of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action....
Although the specific nature of plaintiff's Lanham Act claim is unclear from plaintiff's complaint and its brief opposing the summary judgment motion, it appears that it is alleging "reverse passing off." The gravamen of the harm in a reverse passing off case is that "the originator of the misidentified product is involuntarily deprived of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product." Hoopla Sports and Entertainment, Inc. v. Nike, Inc., 947 F.Supp. 347, 352 (N.D.Ill.1996); see also Waldman Pub'g Corp. v. Landoll, Inc., 43 F.3d 775, 781 (2d Cir.1994) (Lanham Act section prohibiting false designation of origin is aimed at misrepresentation of credit properly belonging to original creator of a work); Cleary v. News Corp., 30 F.3d 1255, 1260 (9th Cir.1994) (reverse passing off occurs when product mislabeled to mask creator's contribution).
Plaintiff has not presented any evidence to support its reverse passing off claim that differs from that adduced to support its copyright claim. Although the Seventh Circuit has not specifically addressed this issue, other district courts in this circuit and courts of appeals have applied state preemption principles to claims brought under the Lanham Act. Natkin v. Winfrey, 111 F.Supp.2d 1003, 1013-14 (N.D.Ill. 2000); Goes Lithography, 26 F.Supp.2d 1042; Lipton v. Nature Co., 71 F.3d 464, 473-74 (2d Cir.1995) (rejecting attempt to "convert all copyright claims into Lanham Act violations"); Shaw v. Lindheim, 919 F.2d 1353, 1364-65 (9th Cir.1990)(declining to expand Lanham Act to cases in which copyright provides adequate remedy). I agree that, in this case, plaintiff cannot recover under the Lanham Act for the same alleged conduct upon which it bases its copyright claim. Plaintiffs claim under the Lanham Act arises from the same conduct as its copyright claim. In fact, it is a copyright infringement claim in disguise, and hence preempted. See Nimmer § 1.01[B][1][e] Therefore, defendants motion for summary judgment on Count V of plaintiffs complaint will be granted.

V. ATTORNEY FEES
Although defendants have asked for attorney fees in their summary judgment motion, they have not supported their request with any argument. The Copyright Act provides that a district court may, in its discretion, "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. A showing of bad faith on the part of the plaintiff is no longer required in order for the defendant to receive attorney fees. Susan Wakeen Doll Company, Inc. v. Ashton Drake Galleries, 272 F.3d 441, 457 (7th Cir.2001) (citing Budget Cinema, Inc. v. Watertower Associates, 81 F.3d 729, 731 (7th Cir.1996)). The Supreme Court in Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), stated that several nonexclusive factors should guide the district court in determining whether to award attorney *982 fees: frivolousness, motivation, objective unreasonableness (both factual and legal components), and the need in particular circumstances to advance considerations of compensation and deterrence. Defendants will have an opportunity in which to submit an itemized bill and memorandum in support of their request for attorney fees. Because defendants have not supported their request with any argument, defendants must provide in their memorandum a legal basis on which this court can award attorney fees. Plaintiff will have an opportunity to respond to defendants' request in its memorandum.

ORDER
IT IS ORDERED that the motion for summary judgment by defendants Gilley's European Tan Spa and Dan Gilley against the claims of the plaintiff Mist-On Systems, Inc. for copyright infringement, contributory copyright infringement, vicarious liability, common law unfair competition and false designation of origin and unfair competition under the Lanham Act is GRANTED. FURTHER IT IS ODERED that defendants shall have until May 21, 2002 to submit an itemized bill arid memorandum in support of its request for attorney fees. Plaintiff shall have until May 31, 2002 to file a response.
*983 
*984 
*985 
*986