**TINGLEY SYSTEMS, INC. Plaintiff**

v.

**CSC CONSULTING, INC. f/k/a CSC PARTNERS, INC. Defendant.**

### No. 95–10284–RCL.

United States District Court, D. Massachusetts.

July 18, 2001.

See also 181 F.3d 174.

---

G. Donovan Conwell, Jr., Guillermo A. Pernas, Jr., Brent J. Gibbs, Fowler, White, Gillen, Tampa, FL, Edward P. Leibensperger, Nutter, McClennen & Fish, Boston, MA, G. Wrede Kirkpatrick, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, for Plaintiff.

Michael A. Walsh, Griesinger & Walsh, LLP, Andrew C. Griesinger, Greisinger & Walsh, LLP, Boston, MA, for Defendant.

Marc K. Temin, Foley, Hoag & Eliot, Boston, MA, for Interested Party.

**MEMORANDUM ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS**

LINDSAY, District Judge.

Before the court is the Motion by CSC Consulting, Inc. to Dismiss. (Docket No. 17). The motion was referred to Magistrate Judge Marianne B. Bowler for a report and recommendation. In her report and recommendation, Magistrate Judge Bowler has recommended that counts I, IV, VII and VIII of the plaintiff's eight-count complaint be dismissed in their entirety, and that counts V and VI in part.[1] (Docket No. 47). The plaintiff objects to the magistrate judge's report and recommendation solely with respect to counts IV and VII. By contrast, the defendant objects to the magistrate judge's report and recommendation that counts II, V, and VI not be dismissed in their entirety.

After conducting a *de novo* review of the issues raised by the motion, I accept the magistrate judge's recommendation and order the following.

The motion by CSC Consulting, Inc. to dismiss (Docket No. 17) is ALLOWED as to counts I, IV, VII and VIII and DENIED as to count II. With respect to counts V and VI, the motion to dismiss is DENIED to the extent those counts are based on the allegation in the complaint of trade secrets misappropriation, and otherwise ALLOWED.

SO ORDERED.

---

1. The plaintiff filed their complaint on February 9, 1995. (Docket No. 1). The complaint alleged eight counts against the defendant. On June 30, 1995, the plaintiff filed an amended complaint, which alleged the same eight counts plus an additional count (count IX). The magistrate judge's report and recommendation refers only to the original complaint. Pursuant to a stipulation between the parties, the judge ordered that the motion to dismiss "shall be deemed to be addressed to Counts I, II, IV, V, VI, VII and VII of TSI's Amended Complaint."

REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION TO DISMISS (DOCKET ENTRY # 17, 95–10284)

ORDER RE: TINGLEY SYSTEMS, INC.'S MOTION TO SUPPLEMENT BAY STATE'S DEPOSITION EXCERPTS (DOCKET ENTRY # 83, 93–11283); TINGLEY SYSTEMS, INC.'S MOTION FOR ENTRY OF DEFAULT JUDGMENT (DOCKET ENTRY # 23, 95–10284); TINGLEY SYSTEMS, INC.'S MOTION TO STRIKE MATERIAL DEPOSITION TESTIMONY ALTERATIONS MADE IN BAY STATE'S WITNESSES' ERRATA SHEETS (DOCKET ENTRY # 69, 93–11283); TINGLEY SYSTEMS, INC.'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS (DOCKET ENTRY # 94, 93–12230); TINGLEY SYSTEMS, INC.'S MOTION FOR LEAVE TO FILE AMENDMENT TO COMPLAINT (DOCKET ENTRY # 74, 93–12230)

BOWLER, United States Magistrate Judge.

Pending before this court are the above styled motions filed in the already consolidated case (Civil Action Nos. 93–11283 and 93–12230) ("the TSI action") and in the later filed action brought by Tingley Systems, Inc. ("TSI") against CSC Consulting, Inc. ("CSC"), Civil Action No. 95–10284 ("the CSC action" or "95–10284"). After conducting an all day hearing on June 5, 1995, this court took the motions under advisement.

I. *TINGLEY SYSTEMS, INC.'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS (DOCKET ENTRY # 94, 93–12230)*

On March 13, 1995, TSI filed a motion to consolidate the CSC action into the TSI action. (Docket Entry # 94, 93–12230). Prior thereto in February 1995, TSI filed a motion to consolidate (Docket Entry # 7, 95–10284) in the CSC case but thereafter withdrew the motion inasmuch as it contravened the provisions of LR. 40.1(H) (Docket Entry # 20, 95–10284). CSC opposes consolidation and submits two affidavits in support thereof by Andrew C. Griesinger ("Griesinger").[1] (Docket Entry ## 14, 15 & 28, 95–10284; Docket Entry # 88, 93–11283). Bay State Health Management, Inc. ("Bay State") and Blue Cross and Blue Shield of Massachusetts, Inc., ("Blue Cross"), defendants in Civil Action No. 93–12230 ("93–12230"),[2] also oppose consolidation. (Docket Entry # 81, 93–11283).

BACKGROUND[3]

The first complaint brought in these related cases was filed on June 11, 1993, by Bay State against TSI in this district, the 93–11283 case. (Docket Entry # 1, 93–11283). On January 10, 1994, TSI filed an answer and a "counterclaim" which essentially seeks to preserve its claims by incorporating by reference all of the allegations

---

1. The first affidavit submitted by Griesinger was undocketed and attached to CSC's opposition to TSI's motion for expedited discovery. (Docket Entry # 13, 95–10284). In that affidavit, Griesinger avers that it is filed in support of CSC's opposition to the motion for expedited discovery. Although submitted in support of TSI's opposition to the motion for expedited discovery, Griesinger's first affidavit is also attached as an exhibit to his second affidavit which is submitted to support CSC's opposition to the motion to consolidate.

2. Bay State is also a plaintiff in Civil Action No. 93–11283 ("93–11283").

3. This background section is also pertinent to resolution of the motion to amend. (Docket Entry # 74, 93–12230).

in the 93–12230 case which, by that time, had been consolidated into the 93–11283 case. (Docket Entry # 44, 93–11283). TSI's counterclaim in the 93–11283 case, therefore, is unnecessary and Bay State properly ignored it.

On June 17, 1993, a few days after Bay State filed the 93–11283 case, TSI filed a complaint against Bay State in the United States District Court in the Middle District of Florida, Case No. 93–933. In October 1993 the Florida case was transferred to this district and assigned the 93–12230 civil action number. On August 15, 1994, TSI filed a motion to amend its complaint to add Blue Cross as a defendant in the 93–12230 case. On September 21, 1994, the district judge allowed the amendment. Accordingly, on September 21, 1994, the verified amended complaint was filed in 93–12230. (Docket Entry # 10, 93–12230). On November 15, 1994, Bay State and Blue Cross filed amended answers to the verified amended complaint. (Docket Entry ## 15 & 16, 93–12230).

Prior thereto, on October 22, 1993, Bay State filed a motion to consolidate the 93–12230 case into the 93–11283 case. (Docket Entry # 36, 93–11283). By Endorsed Order of December 17, 1993, the district judge allowed the consolidation.

Thus, the two cases, 93–11283 and 93–12230, are consolidated as the TSI action, albeit with the aforementioned complaints (Docket Entry # 1, 93–11283; Docket Entry # 10, 93–12230) and answers (Docket Entry # 44, 93–11283; Docket Entry ## 15 & 16, 93–12230).

In September 1994 the district judge set a discovery schedule. (Docket Entry # 68, 93–11283). The schedule, as reflected on the docket sheet,[4] extended discovery to November 30, 1994, established a number of other deadlines, including a deadline for dispositive motions, and set a final pretrial conference for May 16, 1995, with trial to commence on May 30, 1995. Dispositive motions have been filed. The May 30, 1995 trial date is no longer in effect and the parties do not have a substitute trial date.

On December 2, 1994, after conducting numerous depositions during the discovery extension period, TSI filed another motion to extend the discovery schedule. (Docket Entry # 22, 93–12230). In an Endorsed Order of December 16, 1994, the district judge denied TSI's motion for an extension. Undeterred, TSI filed a motion for reconsideration of the December 16, 1994 Endorsed Order (Docket Entry # 39, 93–12230) which the district judge denied on March 13, 1995. Also, on December 21, 1994, the district judge denied TSI's motion to take in excess of 15 depositions (Docket Entry # 33, 93–12230) without prejudice to be renewed once the court rules on TSI's motion to compel. (Docket Entry # 9, 93–12230).

After repeatedly being denied leave to conduct additional discovery in the TSI action, on February 9, 1995, TSI filed an action against CSC, which overlaps the subject matter of the TSI action, i.e., the CSC action. As yet, there is no discovery schedule in the CSC action. The parties refuse to comply with the provisions for automatic discovery in the Local Rules of the United States District Court for the District of Massachusetts absent an agreed upon protective order. At the June 5, 1995 hearing, the parties represented that they had resolved their differences over the terms of a protective order. This court then directed the parties to comply with the automatic discovery provisions within 14 days.

---

4. This court was unable to locate the original Order in the file.

Having reviewed the complaints in the TSI action and the complaint in the CSC action, it is apparent that both actions stem from the same set of factual circumstances revolving around Bay State's use of certain software licensed to it by TSI. The TSI action arises out of a March 1989 software licensing agreement between Bay State and TSI ("the licensing agreement") whereby TSI licensed certain of its software to Bay State ("the TSI software") subject to the terms and conditions of the licensing agreement. One such condition prohibited access to third parties for data conversion. (Docket Entry # 10, 93–12230).

In 1990 Bay State began developing two software packages known as point of sale ("POS") and decision support system ("DSS"). The complaint in the 93–11283 action alleges that Bay State developed these packages with CSC and that they performed functions not performed by and independent of the TSI software. In contrast, the 93–12230 action represents that Bay State used the source code to the TSI software to develop the POS and DSS software packages. TSI and Bay State dispute whether Bay State's development of the POS and DSS software was an authorized modification within the meaning of the licensing agreement.

The TSI action also concerns Bay State's development of an HMO computer system known as the Baystar project in contravention of the licensing agreement in or around 1993, after Bay State became a subsidiary of Blue Cross in September 1992.[5] According to the complaint in 93–12230, Blue Cross instructed Bay State to take the position that it owned the POS

and DSS software. Using "consultants" to assist Bay State in its development of the POS and DSS software packages, Bay State purportedly disclosed the confidential features of the TSI software to such "consultants" and copied numerous features of the TSI software into the POS and DSS software packages.

TSI therefore seeks to impose liability on Bay State and Blue Cross in the 93–12230 case for breach of the licensing agreement including the disclosure of "the TSI source code . . . to CSC Partners and other consultants in violation of paragraph 7 of the licensing agreement." (Docket Entry # 10, ¶ 49, 93–12230). TSI also brings counts for misappropriation of trade secrets under Florida and Massachusetts law, copyright infringement, fraud and violation of Massachusetts General Laws chapter 93A ("chapter 93A"). Finally, TSI seeks to impose liability on Blue Cross under an aiding and abetting theory, interference with contractual relations and quantum meruit. (Docket Entry # 10, 93–12230).

In the 93–11283 action, Bay State essentially seeks a declaratory judgment that the POS and DSS software packages were not modifications of the TSI software within the meaning of the licensing agreement and that the POS and DSS software packages are the property of Bay State. (Docket Entry # 1, 93–11283).

The CSC action also revolves around Bay State's use of the TSI software. As alleged in the complaint, CSC assisted Bay State in developing HMO software known as Baystar including the POS and DSS software packages. The POS and DSS software packages allegedly incorporate

---

5. As described in the verified amended complaint in 93–12230, Bay State was a "sub-subsidiary corporation" of Bay State Health Care, Inc. ("BSHC"). After certain financial improprieties, the Massachusetts Supreme Ju-

dicial Court dissolved BSHC in September 1992. Blue Cross took over the HMO business of BSHC and Bay State thereby became a wholly owned subsidiary of Blue Cross. (Docket Entry # 10, 93–12230).

the file structure of the TSI software. Further, CSC purportedly knew about the licensing agreement and the confidentiality of the TSI software which is registered in the United States Copyright Office. Notwithstanding such knowledge, CSC allegedly used TSI's proprietary software in its work on the Baystar project and on the POS and DSS software packages. TSI therefore seeks to impose liability on CSC under grounds of misappropriation of trade secrets in violation of Florida and Massachusetts law, copyright infringement and violation of Massachusetts General Laws chapter 93A ("chapter 93A"). (Docket Entry # 1, 95–10284).

As previously intimated, the TSI and CSC actions are in different stages of discovery. While discovery closed in the TSI action on November 30, 1994, discovery is just beginning in the CSC action.

### DISCUSSION

"The threshold issue" in determining whether to consolidate two cases "is whether the two proceedings involve a common party and common issues of fact or law." *Seguro de Servicio de Salud de Puerto Rico v. McAuto Systems Group, Inc.*, 878 F.2d 5, 8 (1st Cir.1989). "Once this determination is made, the trial court has broad discretion in weighing the costs and benefits of consolidation to decide whether that procedure is appropriate." *Id.* at 8. Absent "demonstrable prejudice," consolidation is generally allowed. *Id.* at 8; *accord Town of Norfolk v. United State Environmental Protection Agency*, 134 F.R.D. 20, 21 (D.Mass.1991) (quoting *Seguro* ).

It is undeniable that TSI is a common party in the TSI and CSC actions. Although CSC argues, in part, that the TSI action primarily revolves around the contractual provisions of the licensing agreement and that CSC is not a party to this agreement, the actions nonetheless involve common facts, i.e., Bay State's use of the TSI software and its disclosure of such software to CSC in connection the POS and DSS software programs and the Baystar project. TSI also points out that there will be an overlap in expert testimony concerning software development and database design. The TSI and CSC actions also involve common issues of law, to wit, theories of the misappropriation of trade secrets and copyright infringement. While the actions are not identical and do not completely overlap factually and legally, they contain the requisite commonality for consolidation purposes.

Turning to the costs and benefits of consolidation, it is appropriate to consider and weigh the convenience or inconvenience to the parties, the judicial economy, the savings in time, effort or expense and "any confusion, delay or prejudice that might result from consolidation." *Data General Corporation v. Grumman Systems Support Corporation*, 834 F.Supp. 477, 487 (D.Mass.1992), *aff'd*, 36 F.3d 1147 (1st Cir.1994); *Tower of Cranes of America v. Public Service Company of New Hampshire*, 702 F.Supp. 371, 376 (D.N.H. 1988) (court weighs "savings of time and effort that consolidation would produce against any inconvenience, delay or expense that would be caused to the parties and to the Court").

Both CSC and Bay State legitimately point out that TSI is attempting to obtain, through instituting the CSC action, the discovery it was denied in the fall of 1994 in the TSI action. TSI did not satisfactorily address the question posed at the June 5, 1995 hearing about why it chose not to seek leave to amend its complaint in the TSI action to add CSC as a party. In addition, consolidation undoubtedly increases Bay State's expenses and subjects Bay State to a more lengthy trial and,

perhaps, a delay in trial.[6] Further, while discovery is complete and dispositive motions are on file in the TSI action, in contrast, discovery is in an early stage in the CSC action.

On the other hand, although the TSI action is at a more advanced stage, there is nothing to prevent the CSC action from progressing through discovery in a relatively short period of time and receiving a trial date thereafter. CSC's argument about the severe prejudice which consolidation will cause is significantly lessened because the parties no longer have a trial date in the TSI action. Consequently, CSC will have an adequate opportunity to conduct discovery and to uncover the pertinent facts to present its case. CSC will also have the opportunity to retain its own experts, to review the lengthy deposition transcripts in the TSI action and, if necessary, reconvene such depositions to present its case and to preserve its right of cross examination.

Consolidation will substantially reduce the judicial time and resources expended on the TSI and CSC actions. In lieu of two trials, there will be one trial. In lieu of two juries, there will be one jury.

In sum, having weighed the relevant factors and in light of the absence of demonstrable prejudice to CSC, Blue Cross and Bay State, this court finds, in its discretion, that it is appropriate to consolidate the two cases into one proceeding.

## II. *DEFENDANT'S MOTION TO DISMISS (DOCKET ENTRY # 17, 95–10284)*

CSC's motion to dismiss concerns whether counts I, II, IV, V, VI, VII and VIII of the complaint in 95–10284 are preempted by section 301(a) of the Copyright Act, 17 U.S.C. § 301(a) ("section 301(a)").[7] (Docket Entry # 17, 95–10284). CSC and TSI addressed the issue in depth at the all day hearing on June 5, 1995, as well as in their papers (Docket Entry # 18, 22, 31 & 36, 95–10284).

The counts at issue are for: (1) CSC's misappropriation of trade secrets under Florida law (Count I);[8] (2) CSC's misappropriation of trade secrets under Massachusetts law (Count II); (3) violation of chapter 93A (Count IV); (4) conspiracy (Count V);[9] aiding and abetting (Count VI); (5) interference with contractual relations (Count VII); and (6) quantum meruit (Count VIII).

The complaint, which attaches a copy of the licensing agreement,[10] generally alleges a scheme whereby CSC obtained access to TSI's confidential trade secrets, i.e., its computer software licensed to Bay State under the licensing agreement, with

---

6. The case for the resulting delay of a trial is no longer convincing because the parties do not have a trial date in the TSI action.

7. Count III of the complaint is for copyright infringement.

8. The motion to dismiss also seeks to dismiss Count I under conflict of laws principles.

9. The motion to dismiss additionally seeks dismissal of Count V for failure to state a claim for civil conspiracy under Massachusetts law.

10. The complaint also refers to certain reports attached as exhibit B. The complaint, however, only contains one attached exhibit, exhibit A, which this court will consider inasmuch as it is incorporated by reference. *See Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993) (court may consider documents incorporated by reference as well as those central to complaint in deciding motion to dismiss notwithstanding general rule against consideration of documents extraneous to complaint). With respect to exhibit B, however, the exhibit is neither attached to the complaint nor submitted with the pleadings addressing the motion to dismiss (Docket Entry ## 17, 18, 22, 31 & 36). Hence, this court cannot consider the document.

knowledge of the terms of the licensing agreement which prohibited disclosure and use by third parties such as CSC. CSC then used the TSI software to create and develop the HMO software system known as Baystar under one or more contracts with Bay State.

Bay State budgeted more than $25 million for the Baystar project. Baystar is comprised of other software programs including POS and DSS. As set forth in the complaint, CSC's copying and use of TSI's confidential software allowed CSC to develop a computer system for an HMO despite its lack of experience with HMOs and the HMO industry.[11]

### DISCUSSION

On a motion to dismiss this court accepts the factual allegations in the complaint as true and makes all reasonable inferences in favor of TSI. *Watterson v. Page*, 987 F.2d at 3. The general allegations, however, must "be supported by a specific factual basis." *Fleming v. Lind–Waldock & Company*, 922 F.2d 20, 23 (1st Cir.1990) (court ignores conclusions or generalized characterizations of a pleader as essentially pleader's reactions and "empirically unverifiable"). Although "great specificity is ordinarily not required," *Garita Hotel, Ltd. v. Ponce Federal Bank*, 958 F.2d 15, 17 (1st Cir.1992), it is necessary to allege facts to support "each material element of the underlying legal theory." *Fleming v. Lind–Waldock & Company*, 922 F.2d at 23. As phrased in *Garita Hotel* and repeatedly in other cases, a court may dismiss a count " 'for failure to state a claim only if it appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.' " *Garita Hotel, Ltd. v. Ponce Federal Bank*, 958 F.2d at 17 (quoting *Correa–Martinez v.*

*Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990)).

A. *Preemption and the Trade Secrets Counts (Counts I and II)*

Section 301(a) states, in pertinent part, that:

[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright ... are governed exclusively by this title.

17 U.S.C. § 301(a). Section 301(b) expresses the caveat that the Copyright Act does not limit or annul "activities violating legal or equitable rights that are not equivalent to any of the exclusive rights." 17 U.S.C. § 301(b)(3).

■ The parties do not seriously dispute that the TSI software falls "within the subject matter of copyright." *See Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir.1995) (noting that in order to preempt under section 301(a) the cause of action must fall within subject matter of copyright); *Rubin v. Brooks/Cole Publishing Company*, 836 F.Supp. 909, 923 (D.Mass. 1993) (first step in determining preemption is to find that work falls within subject matter of copyright). Computer programs receive copyright protection as literary works inasmuch as they incorporate the programmer's expression of his original ideas as opposed to the ideas themselves. *Lotus Development Corporation v. Borland International, Inc.*, 49 F.3d 807, 813 n. 5 (1st Cir.), *petition for cert. granted*, 515 U.S. 1191, 116 S.Ct. 39, 132 L.Ed.2d 921 (1995).

■ As established in this circuit, courts employ the following "functional test" to assess preemption under section 301(a). " 'If a state cause of action requires an

---

**11.** Additional detail of the facts in the complaint is set forth *infra* in the course of addressing the respective counts which CSC seeks to dismiss.

extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is *qualitatively different* from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action.' " *Data General Corporation v. Grumman Systems Support Corporation*, 36 F.3d 1147, 1164 (1st Cir.1994) (emphasis added).

The extra element must be qualitatively different from the rights protected by copyright law.[12] The extra element "must be one which changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Mayer v. Wedgwood & Sons, Limited*, 601 F.Supp. 1523, 1535 (S.D.N.Y.1985) (cited in *Data General*, 36 F.3d at 1165, albeit for different principle). Thus, the label attached to the cause of action is not outcome determinative. Nor will the fact that a cause of action includes elements of awareness, intent or commercial misconduct save the claim from preemption where such additional elements merely alter the scope of the action and not its nature. *Rubin v. Brooks/Cole Publishing Company*, 836 F.Supp. at 923; *accord Data General Corporation v. Grumman Systems Support Corporation*, 36 F.3d at 1165. Thus, the state cause of action must be "predicated upon an act incorporating elements beyond mere reproduction," *Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 200 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985), failure to obtain permission for use or continued use, *Rubin v. Brooks/Cole Publishing Company*, 836 F.Supp. at 924, in order to

be qualitatively different from and not equivalent to federal copyright law.[13]

With respect to the trade secrets counts, CSC must distinguish *Data General*, 36 F.3d at 1164–1165, and its affirmance of the lower court's decision that the common law misappropriation of trade secrets count under Massachusetts law alleged therein was not equivalent and, hence, not preempted by federal copyright law, *Data General Corporation v. Grumman Systems Support Corporation*, 795 F.Supp. 501, 507 (D.Mass.1992). In *Data General*, the defendant acquired copies of the plaintiff's software program, ADEX, from former employees of the plaintiff in violation of the confidentiality agreements between the former employees and the plaintiff. In summarizing the preemption argument, the First Circuit characterized the trade secrets claim as "based on [the defendant's] acquisition of ADEX in violation of confidentiality agreements binding on former [Data General/the plaintiff] employees and service customers." *Data General*, 36 F.3d at 1157. The First Circuit reiterated this characterization of the trade secrets claim in its discussion on preemption. The plaintiff's "theory was precisely that [the defendant] acquired ADEX by participating in the breach of confidentiality agreements binding on former employees and service customers of [the plaintiff]." *Data General*, 36 F.3d at 1165. These allegations are strikingly similar to the factual allegations in the complaint.

Trade secrets law in Massachusetts requires a showing of "improper means, in breach of a confidential relationship, to

---

12. The Copyright Act sets forth the exclusive rights protected by the statute in section 106. They are the right: (1) to reproduce; (2) to prepare derivative works; (3) to distribute copies; (4) to perform certain types of artistic works; and (5) to publicly display certain forms of literary and artistic works. 17 U.S.C. § 106.

13. In addition to applying to the trade secret counts, the foregoing discussion pertains to all of the counts subject to preemption.

acquire and use the trade secret." [14] *Data General*, 36 F.3d at 1165. While noting that not every extra element in a state law claim establishes the requisite qualitative difference, the First Circuit stated the following which, when analyzed and compared to the factual allegations in the case at bar, inevitably leads to a finding of no preemption.

> Nonetheless, a trade secrets claim that requires proof of a breach of a duty of confidentiality stands on a different footing. Such claims are not preempted because participation in the breach of a duty of confidentiality—an element that forms no part of a copyright infringement claim—represents unfair competitive conduct qualitatively different from mere unauthorized copying.

*Data General*, 36 F.3d at 1165.

■ Reviewing the complaint to determine if TSI presents a viable trade secrets claim which is not preempted, the facts therein allege that CSC knew about the terms of the licensing agreement and that the TSI software was both proprietary and confidential to TSI. Further, "CSC knew that it could not use the TSI software or documentation for any purpose." (Docket Entry # 1, ¶¶ 18 & 25, 95–10284). The complaint devotes six paragraphs to the terms of the licensing agreement which state, in various sections, that: (1) "Licensee shall not sell, transfer, publish, disclose, display or otherwise make available to others the Software;" (2) "Licensee acknowledges that the Software, User Manual and Documentation contain proprietary trade secrets;" (3) "Licensee shall require all of its employees who have access to the source code and/or design concepts of the system to sign a Confidentiality Agreement;" and (4) "Licensee shall not provide access to the Software to any third party for data conversion for any purpose, including but not limited to, conversion to another software system." (Docket Entry # 1, ¶¶ 19–24, 95–10284).

CSC's access to the TSI software enabled it to develop Baystar which included the POS and DSS software packages. (Docket Entry # 1, ¶ 29, 95–10284). The complaint further states that CSC gained access to TSI's trade secrets, i.e., the TSI software, and, without the authorization of TSI, "induced Bay State to reveal such [trade] secrets to CSC." In other words, CSC's conduct went beyond merely copying and using the TSI software. [15] Rather, its conduct included obtaining access to the TSI software which it knew was confidential and subject to the confidentiality provisions of the licensing agreement. Even more noteworthy for present purposes, paragraph 37 states that "CSC owed a duty to TSI not to view, copy, use or otherwise breach the confidentiality of the TSI software or documentation" which CSC breached by its misappropriation of such software. [16] (Docket Entry # 1, ¶¶ 18, 25, 36 & 37, 95–10284).

---

14. Due to this court's recommendation to dismiss Count I, the pertinent trade secret law is the law of Massachusetts.

15. Factual allegations of wilful or intentional copying, however, are merely more egregious descriptions of the copyist's conduct which remain preempted. *See, e.g., Data General*, 36 F.3d at 1164–1165 ("element of awareness and intentional interference not necessary for proof of copyright infringement" are nevertheless equivalent where such elements "merely concern the extent to which authors and their licensees can prohibit unauthorized copying").

16. As similarly summarized in paragraph 42, the TSI software was a trade secret. "CSC was aware of the confidentiality of the TSI software" and had a duty "not [to] breach the confidentiality of the TSI software." Nonetheless, CSC's misappropriation of the TSI software breached the aforementioned duty of

The extra element supplied under the state cause of action which requires the showing of the use of an improper means in breach of a confidential relationship to acquire the trade secret qualitatively distinguishes the trade secrets counts from federal copyright law. The factual allegations in the complaint allege the type of trade secrets violation involving the breach of a duty of confidentiality. Such a claim therefore requires proof of a breach of a confidential relationship which is not required by federal copyright law and therefore is not preempted. *Data General*, 36 F.3d at 1165; *see also Gates Rubber Company v. Bando Chemical Industries, Ltd.*, 9 F.3d 823, 846 (10th Cir.1993).

CSC nevertheless tries to distinguish *Data General* by noting that CSC is not a competitor of TSI with respect to developing computer programs for the HMO industry. Although the first sentence of the *Data General* opinion notes that the plaintiff and the defendant were "competitors in the market," this court is not convinced that this distinction provides a basis to forego applying the reasoning of *Data General* to the facts alleged in the instant complaint.

CSC also emphasizes that CSC obtained the trade secrets as a consultant to Bay State for use by Bay State. Relying on two district court cases from the Eastern District of Pennsylvania and the distinctions therein, *Gemel Precision Tool Company, Inc. v. Pharma Tool Corporation*, 1995 WL 71243 (E.D.Pa. Feb. 13, 1995); *Long v. Quality Computers and Applications, Inc.*, 860 F.Supp. 191 (E.D.Pa. 1994),[17] CSC maintains that the trade se-crets claims fall in the preempted category as based on the use of TSI's software rather than in the nonpreempted category as based on the confidential disclosure of material that a defendant has a duty to keep confidential. *See Gemel Precision Tool Company, Inc. v. Pharma Tool Corporation*, 1995 WL 71243 at * 7 (E.D.Pa. Feb. 13, 1995). First and foremost, an eastern district court case from Pennsylvania holds far less precedence in this court than a First Circuit opinion. Second, although not every trade secrets claim will survive preemption, the facts in the complaint in 95–10284 allege more than mere copying and use of the TSI software by CSC. Rather, they allege the breach of a duty of confidentiality resulting from CSC's acquisition of the TSI software, a protected trade secret. The state law cause of action requires establishing the use of an improper means in breach of a confidential relationship. Thus, there exists the necessary qualitative difference from copyright law inasmuch as the trade secrets claims require proof of the breach of a duty of confidentiality in CSC's acquisition of the TSI software.

Furthermore, the First Circuit is not the only circuit which has found various trade secrets claims not preempted by federal copyright law. *See, e.g., Gates Rubber Company v. Bando Chemical Industries, Ltd.*, 9 F.3d 823, 846–847 (10th Cir.1993) (cited repeatedly in *Data General*, 36 F.3d at 1164–1165, and finding that trade secrets claim requiring breach of trust or confidence not required under Copyright Act was not preempted); *Trandes Corporation v. Guy F. Atkinson Company*, 996

confidentiality. (Docket Entry # 1, ¶ 42, 95–10284).

**17.** In finding no preemption as to one party with respect to a trade secrets claim, the court in *Long* cited to *Computer Associates International, Inc. v. Altai, Inc.*, 982 F.2d 693

(2d Cir.1992), which the First Circuit cited in *Data General*, 36 F.3d at 1164, in a parenthesis as relied on by *Gates Rubber Company v. Bando Chemical Industries, Limited*, 9 F.3d 823 (10th Cir.1993).

F.2d 655, 660 (4th Cir.), *cert. denied,* 510 U.S. 965, 114 S.Ct. 443, 126 L.Ed.2d 377 (1993) (cited in *Data General,* 36 F.3d at 1164, and finding that because the plaintiff's trade secrets claim "requires proof of a breach of trust or confidence, § 301 does not preempt the claim"); *Computer Associates International, Inc. v. Altai, Inc.,* 982 F.2d 693, 717–718 (2d Cir.1992) (breach of duty in trade secrets claim supplies necessary "extra element that qualitatively distinguishes such" claims from copyright law); *see generally* 1 *Nimmer on Copyright* § 1.01[B][h] (1994) (discussing preemption of trade secrets claims).

This court therefore concludes that counts I and II are not preempted by federal copyright law.

B. *Preemption and the Chapter 93A Claim (Count IV)*

■ The chapter 93A claim, however, stands on a different footing.[18] A close reading of *Data General,* 36 F.3d at 1164–1165, and the cases cited therein,[19] convince this court that the First Circuit would deem the instant chapter 93A claim preempted. In addition, other circuits and lower court decisions routinely preempt unfair deceptive trade practices claims based on misappropriation theories as opposed to passing off or palming off theories.

Not only does *Data General* cite to *Trandes* and *Gates* as discussed in the foregoing footnote, but the court, *Data General,* 36 F.3d at 1164–1165, next cites to *Harper & Row Publishers, Inc. v. Nation Enterprises,* 723 F.2d at 201, for the principle that a state cause of action for interference of contractual relations which simply requires the additional elements of awareness or intent is not preempted. As explained in the very next sentence, merely because a plaintiff must prove that copying was "commercially immoral" as well as unauthorized does not save a state law misappropriation claim from preemption. Applying this logic to chapter 93A, labeling conduct commercially immoral or, as under chapter 93A, unfair, immoral, unethical or unscrupulous, does not save a chapter 93A claim from preemption. Further, unlike a trade secrets claim, a chapter 93A claim does not require proof of improper means through the breach of a duty of confiden-

---

**18.** The confines of what constitutes a chapter 93A violation is a question of law. Section 11, applicable to the instant dispute between commercial parties engaged in commerce, prescribes "unfair acts or practices." The oft cited standard for imposing liability under section 11 is objectionable conduct which attains " 'a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.' " *Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.,* 884 F.2d 1510, 1513 (1st Cir.1989) (citation omitted). A chapter 93A claimant must set forth conduct which falls " 'within at least a penumbra of some common law, statutory, or other established concept of unfairness,' or [was] 'immoral, unethical, oppressive or unscrupulous,' and resulted in 'substantial injury to competitors or other businessmen.' " *Logan Equipment Corp. v. Simon Aerials, Inc.,*

736 F.Supp. 1188, 1203–1204 (D.Mass.1990) (citation omitted).

**19.** The court in *Trandes Corporation v. Guy F. Atkinson Company,* 996 F.2d 655, 660 (4th Cir.1993), cited in *Data General,* 36 F.3d at 1165, examined the cause of action (trade secret misappropriation) and determined that it incorporated an extra element (employment of improper means such as abuse of confidence or trust) and was therefore not preempted. In *Gates,* the court analyzed the necessary elements under Colorado law to establish misappropriation of a trade secret. In so doing, the court determined that the statute required proof of a breach of trust or confidence which was not required under copyright law and, therefore, was not preempted. *Gates Rubber Company v. Bando Chemical Industries, Limited,* 9 F.3d 823, 847–848 (10th Cir.1993).

tiality or trust.[20]

Significantly, the district court in *Data General* found the unfair competition claim preempted while finding the trade secrets claim not preempted. The district court in *Data General*, which as previously explained involves a similar fact pattern, rejected assertions that Grumman's "wrongful acquisition and possession of the software"[21] or Grumman's unfair competition via its misappropriation of Data General's software created an extra element essential to the unfair competition claim. Instead, it found the claim "fundamentally equivalent to the copyright infringement claim." *Data General*, 795 F.Supp. at 506. TSI essentially complains about CSC's wrongful acquisition of its software. The fact that it obtained such software from Bay State which was under a licensing agreement containing confidentiality provisions with TSI does not detract from the fundamental nature of CSC's conduct which was copying and using TSI's protected software. The rights protected by chapter 93A, which do not require a showing of improper means in breach of a confidential relationship, in this instance are not qualitatively different from copying and use protected under section 106 of the Copyright Act.

Although there is a line of cases which exempts a claim of unfair trade practices from preemption when the claim involves "palming off" or "passing off,"[22] the complaint contains no facts to support such a nonpreempted claim. *Warner Brothers, Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 247 (2d Cir.1983) (state law claims "on misappropriation branch of unfair competition are preempted" while state law claims of unfair competition alleging "'passing off'" are not preempted); *Innovative Networks, Inc. v. Satellite Airlines Ticketing Centers, Inc.*, 871 F.Supp. 709, 730–731 & n. 21 (S.D.N.Y. 1995) (recognizing that state unfair competition claims relying on misappropriation theory, "including claims for commercial immorality," are preempted and, although unfair competition claim based on "passing off" is not preempted, complaint failed to state such a cause of action); *FASA Corporation v. Playmates Toys, Inc.*, 869 F.Supp. at 1362 (it is "generally recognized that unfair competition claims premised on 'passing off' are not preempted"); *Waldman Publishing Corporation v. Landoll, Inc.*, 848 F.Supp. 498 (S.D.N.Y.), *vacated in part and remanded in part on other grounds*, 43 F.3d 775 (2d Cir.1994) (statutory claim and common law claim for unfair competition under New York law preempted inasmuch as the plaintiffs failed to plead traditional passing off claim); *Rubin v. Brooks/Cole Publishing Company*, 836 F.Supp. 909, 924–925 (D.Mass. 1993) (publisher's representations to public that its use of copyrighted "Love Scale" psychological instrument was with author's permission incorporated extra element of deception and, deriving guidance from "de-

---

20. This court does not read the complaint as alleging a breach of fiduciary duty. Rather, this court reads the complaint as alleging the breach of a licensing agreement between two business entities which contains confidentiality provisions.

21. Although the nature of the wrongful acquisition of the software is not clear from the opinion, presumably, the "wrongful acquisition" of the software involved the underlying facts, i.e., the acquisition of the software by Grumman from former employees and customers of Data General in contravention of their duties of confidentiality.

22. "'Passing off' involves 'the selling of a good or service of one's own creation under the name or mark of another.'" *FASA Corporation v. Playmates Toys, Inc.*, 869 F.Supp. 1334, 1362 (N.D.Ill.1994) (quoting *Web Printing Controls Co. v. Oxy–Dry Corporation*, 906 F.2d 1202, 1203 n. 1 (7th Cir.1990)).

ceptive trade practices claims of the 'passing off' variety," claim was not preempted);[23] *Patricia Kennedy & Company, Inc. v. Zam–Cul Enterprises, Inc.,* 830 F.Supp. 53, 57 (D.Mass.1993) (chapter 93A claim alleging acquisition of protected logo and publication of letter attributing authorship to the defendants not preempted);[24] *Xerox Corporation v. Apple Computer, Inc.,* 734 F.Supp. 1542, 1550–1551 & n. 15 (N.D.Cal.1990) (statutory unfair business practices claim preempted inasmuch as theory alleged was based on misappropriation rather than "passing off"); *Motown Record Corporation v. George A. Hormel & Company,* 657 F.Supp. 1236, 1239–1240 (C.D.Cal.1987) (statutory unfair competition claim alleging that the defendant's unauthorized use of copyrighted song in broadcasted commercial was preempted where essence of complaint was unauthorized use of copyrighted song); *Universal City Studios v. T–Shirt Gallery, Limited,* 634 F.Supp. 1468, 1475–1476 (S.D.N.Y. 1986) (finding preemption of unfair competition under New York law and rejecting argument that allegations of "commercial immorality" and "unjustifiable attempt to profit at another's expense" created extra element); *Peckarsky v. American Broadcasting Company, Inc.,* 603 F.Supp. 688, 696 (D.D.C.1984) (unfair trade practices claim alleging failure to give proper credit to journalist's news article preempted); *see also P.I.T.S. Films v. Laconis,* 588 F.Supp. 1383 (E.D.Mich.1984) (quoting

Notes of Committee on the Judiciary of the House of Representatives on preemptive effect of section 301(a) wherein it states that " 'deceptive trade practices such as passing off and false representation' represents an effort to distinguish between those causes of action known as 'unfair competition' that the copyright statute is not intended to preempt and those that it is"); *see generally* 1 *Nimmer on Copyright* § 1.01[B][e] (1994).

Following the majority view and in light of the district court opinion in *Data General,* 795 F.Supp. at 506, as well as the First Circuit opinion, *Data General,* 36 F.3d at 1164–1165, this court finds the chapter 93A claim in Count IV preempted.

*C. Preemption and the Interference With Contract Claim (Count VII)*

■ TSI's intentional interference with contract claim requires proof that: "(1) the plaintiff had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by [the defendant's] actions." *Wright v. Shriners Hospital,* 412 Mass. 469, 589 N.E.2d 1241, 1245–1246 (1992) (citing *United Truck Leasing Corporation v. Geltman,* 406 Mass. 811, 551 N.E.2d 20 (1990)); *Felinska v. New England Teamsters & Trucking Industry Pension Fund,*

**23.** The court in *Rubin,* however, simultaneously preempted that portion of the plaintiff's chapter 93A claim which was based on the defendant's reproduction and continued use of the Love Scale without the plaintiff's permission. *Rubin v. Brooks/Cole Publishing Company,* 836 F.Supp. at 924; *see also FASA Corporation v. Playmates Toys, Inc.,* 869 F.Supp. at 1363 n. 48 (discussing and distinguishing *Rubin* ).

**24.** In *Kennedy,* the court distinguished the district court decision in *Data General* by

characterizing the claim therein as seeking redress for the defendant's unfair competition by misappropriating the plaintiff's software which "is of a different nature" than the case at bar. *Patricia Kennedy & Company, Inc. v. Zam–Cul Enterprises, Inc.,* 830 F.Supp. at 60 (decision on motion for reconsideration of preemption ruling). TSI's complaint, however, is more closely aligned to the facts alleged in the district court decision in *Data General* rather than the facts alleged in *Kennedy.*

855 F.Supp. 474, 478 (D.Mass.1994) (reiterating same elements).

■ As expressed in the complaint, CSC, with knowledge of the licensing agreement and its provisions, knowingly conspired with Bay State to copy the TSI software. (Docket Entry # 1, ¶¶ 18–26, 95–10284). CSC thereby intentionally interfered with TSI's licensing agreement with Bay State resulting in damage to TSI. (Docket Entry # 1, ¶¶ 70–71, 95–10284).

Such a claim does not establish a fundamentally or qualitatively different element. Rather, it merely adds an element of awareness and intentional interference on the part of CSC. In finding preemption of a tortious interference claim, the Second Circuit stated the following:

> [T]he fact that cross-appellants pleaded additional elements of awareness and intentional interference, not part of a copyright infringement claim, goes merely to the scope of the right; it does not establish a qualitatively different conduct on the part of the infringing party, nor a fundamental nonequivalence between the state and federal rights implicated.

*Harper & Row Publishers, Inc. v. Nation Enterprises,* 723 F.2d at 201.

The First Circuit cites *Harper Row* as an example of this nonequivalent distinction.

> For example, a state claim of tortious interference with contractual relations may require elements of awareness and intentional interference not necessary for proof of copyright infringement. And yet, such an action is equivalent in substance to a copyright infringement claim where the additional elements

merely concern the extent to which authors and their licensees can prohibit unauthorized copying by third parties.

*Data General,* 36 F.3d at 1164–1165 (citing *Harper & Row Publishers, Inc. v. Nation Enterprises,* 723 F.2d at 201). Other courts similarly find tortious interference of contract claims preempted under analogous reasoning. *See, e.g., FASA Corporation v. Playmates Toys, Inc.,* 869 F.Supp. at 1359 (collecting eight cases for principle that "courts addressing" preemption of "state law claims for tortious interference with contract" generally conclude "that such claims are preempted"); *Pacific & Southern Company, Inc. v. Satellite Broadcast Networks, Inc.,* 694 F.Supp. 1565, 1572–1573 (N.D.Ga.1988), *rev'd on other grounds,* 940 F.2d 1467 (1991) (collecting cases; tortious interference with contract claim preempted); *Motown Record Corporation v. George A. Hormel & Company,* 657 F.Supp. at 1240 (citing *Harper & Row Publishers, Inc. v. Nation Enterprises,* 723 F.2d at 201, and finding intentional interference with prospective business advantage claim preempted); *see also* 1 *Nimmer on Copyright* § 1.01[B][a] (1994) (fact that tort of intentional interference with contract, "unlike copyright infringement, requires awareness of the conflicting contract and an intentional interference with it" does not preclude preemption).[25]

This court therefore concludes that the interference with contract claim in Count VII is preempted.

D. *Preemption and the Quantum Meruit Claim (Count VIII)*

■ Count VIII, captioned "Quantum Meruit," incorporates paragraphs one

---

**25.** CSC correctly points out (Docket Entry # 31, pp. 11–12, 95–10284) that the facts in the case relied on by TSI, *Cassway v. Chelsea Historic Properties I, L.P.,* 1993 WL 64633 (E.D.Pa. March 4, 1993) (finding no preemption of tortious interference claim), markedly differ from the facts alleged in the case at bar.

through 39 of the complaint and seeks to impose liability on the theory that CSC unjustly benefitted and was enriched due to its acquisition and use of the TSI software.[26] The paragraph specifically devoted to this count states that:

> CSC has been unjustly benefitted and enriched to the extent that CSC has been paid by Bay State for work product it prepared using or copying from the TSI software and documentation. CSC has not been paid a license fee to TSI for rights to see, copy or use the TSI software and documentation for such purpose. CSC should be required to compensate TSI and pay a license fee to TSI for CSC's use and enjoyment of the TSI software and documentation.

(Docket Entry # 1, ¶ 74, 95–10284).[27]

Massachusetts law generally provides that, " 'A person who has been unjustly enriched at the expense of another is required to make restitution to the other.' " *Salamon v. Terra*, 394 Mass. 857, 477 N.E.2d 1029, 1031 (1985). In addition, TSI's expectation of payment should be reasonable. *See Scully Signal Company v. Joyal*, 881 F.Supp. 727, 745 (D.R.I.1995).

TSI's claim, which alleges the wrongful acquisition and use of the TSI software and demands compensation for such use and for the conferred benefits, does not qualitatively differ from a copyright infringement claim. The claim seeks to recover benefits which CSC derived from its unauthorized use and copying of the copyrighted software. The alleged fact that CSC obtained the TSI software from Bay State thereby engendering Bay State's breach of confidentiality provisions in the licensing agreement does not materially change nor add an extra element to the nature of the claim. Similar to the unjust enrichment claim preempted in *Data General*, 795 F.Supp. at 506, TSI's claim essentially repackages its allegations of copyright infringement by adding the allegation that CSC unjustly benefitted from its acquisition of the TSI software.

■ "[A] state cause of action for unjust enrichment or quasi contract should be regarded as an 'equivalent right' and hence preempted insofar as it applies to copyright subject matter." 1 *Nimmer on Copyright* § 1.01[B][g] (1994); *see, e.g., Ehat v. Tanner*, 780 F.2d 876, 878 & n. 2 (10th Cir.1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 86, 93 L.Ed.2d 39 (1986) (finding unjust enrichment and unfair competition claims alleging that the defendant derived profit from misappropriation and used copyrighted material stolen from office were preempted); *Wilson v. Mr. Tee's*, 855 F.Supp. 679, 684 (D.N.J.1994) (unjust enrichment and quantum meruit claims preempted); *Kunycia v. Melville Realty Company, Inc.*, 755 F.Supp. 566, 577 (S.D.N.Y.1990) (unjust enrichment claim alleging reproduction of copyrighted works without compensation to the plaintiff preempted).

Similar to the claims in the above line of cases, TSI's quantum meruit claim is preempted.

---

**26.** The terms unjust enrichment and quantum meruit are often used interchangeably. *Bolen v. Paragon Plastics, Inc.*, 747 F.Supp. 103, 106 (D.Mass.1990).

**27.** It is worth recognizing that the "rights to see, copy or use" alleged in the above paragraph are explicitly covered in section 106 of the Copyright Act. In addition, TSI's attempts to recharacterize the claim in its opposition memorandum are unconvincing. "The claim upon which [the motion to dismiss for preemption] must be decided is the one alleged in the complaint." *Data General*, 795 F.Supp. at 506 (finding preemption of unjust enrichment claim).

**E.** *Preemption and the Civil Conspiracy and Aiding and Abetting Claims (Count V and VI)*

In Count V, TSI incorporates paragraphs one through 33 of the complaint and seeks to impose liability for CSC's actions in concert "pursuant to a common design" with Bay State and Blue Cross to misappropriate TSI's trade secrets and to engage in unfair and deceptive trade practices.[28] In Count VI, TSI alleges that CSC knowingly and intentionally assisted and aided Bay State in misappropriating TSI's trade secrets and in engaging in unfair and deceptive trade practices.[29]

The tort of civil conspiracy applicable to Count V "is akin to a theory of common law joint liability in tort." *Aetna Casualty Surety Company v. P&B Autobody*, 43 F.3d 1546, 1564 (1st Cir.1994) (discussing civil conspiracy under Massachusetts law). It requires "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." *Aetna Casualty Surety Company v. P&B Autobody*, 43 F.3d at 1564.[30]

 The tort of aiding and abetting in Massachusetts "attaches where: (1) the defendant provides 'substantial assistance or encouragement to the other party;' and (2) the defendant has 'unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions.'" *Austin v. Bradley, Barry & Tarlow, P.C.*, 836 F.Supp. 36, 40 (D.Mass.1993).

Both counts rely on the underlying previously plead theories of misappropriation of trade secrets and unfair and deceptive trade practices under chapter 93A. TSI maintains that because its misappropriation of trade secrets and chapter 93A counts are not preempted its civil conspiracy and aiding and abetting counts are not preempted. (Docket Entry # 22, 95–10284).

In juxtaposition, CSC submits that because the underlying tortious conduct is preempted the civil conspiracy and aiding and abetting counts are also preempted. CSC additionally contends that because the issues of contributory and vicarious liability of accused copyists are within the subject matter of copyright law, the rights which TSI seeks to protect in the civil conspiracy and aiding and abetting counts are equivalent to those protected under the Copyright Act. (Docket Entry # 18, 95–10284).

---

**28.** TSI withdraws its civil conspiracy claim to the extent it alleges that CSC conspired to copy TSI's software. (Docket Entry # 22, p. 23, 95–10284). TSI made a similar representation with respect to its aiding and abetting count at the June 5, 1995 hearing.

In its pleading, however, TSI further notes, in one sentence, that it "seeks permission from the Court to amend its Complaint to assert a claim of contributory infringement against CSC." (Docket Entry # 22, p. 23, 95–10284). In the event TSI wishes to amend its complaint to allege a contributory infringement count, it should do so by separate motion and supporting memorandum and attach a copy of the proposed amended complaint.

**29.** The aiding and abetting count (Count VI) (Docket Entry # 1, ¶¶ 62–67, 95–10284) fails to incorporate any of the preceding paragraphs of the complaint.

**30.** There are two forms of civil conspiracy causes of action in Massachusetts. *Aetna Casualty Surety Company v. P&B Autobody*, 43 F.3d at 1563–4. In seeking to dismiss Count V for failure to state a claim, CSC relies on the more limited cause of action for civil conspiracy rather than the foregoing form of civil conspiracy akin to the theory of joint liability in tort. (Docket Entry # 18, pp. 22–23). Its argument, therefore, does not provide a basis for dismissal under Rule 12(b)(6), Fed.R.Civ.P., because it does not apply to the civil conspiracy alleged by TSI.

■ Logically, to the extent any allegations in these counts survive, it is only the allegations concerning the underlying theory of trade secrets misappropriation (Docket Entry #1, ¶¶ 58 & 63, 95–10284)[31] which, as discussed in section II(A), is not preempted. Aiding and abetting or acting in concert solely with respect to the nonpreempted trade secrets claim is not preempted simply because the copyright law imposes contributory and vicarious liability on accused copyists for committing preempted conduct such as copying and using protected material. CSC posits no other argument in support of dismissal of these counts. Hence, they remain in this case, albeit solely as to paragraphs 58 and 63.

F. *Dismissal of Count I on Choice of Law Grounds*

CSC additionally moves to dismiss Count I (misappropriation of trade secrets under Florida law) on the basis that Massachusetts rather than Florida law applies to the claim. TSI, however, contends that Florida law applies under the functional test adopted by the Massachusetts Supreme Judicial Court ("SJC"). TSI maintains that Florida's adoption of the Uniform Trade Secrets Act militates in favor of applying Florida law.

■ A federal court sitting in diversity applies the choice of law rules of the forum state. *Klaxon v. Stentor Electric Manufacturing Company, Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *American Title Insurance Company v. East West Financial Corporation*, 959 F.2d 345, 348 (1st Cir.1992) (citing *Klaxon*). In tort actions, Massachusetts has abandoned strict adherence to the rule of *lex loci delicti* and adopted a more flexible approach. *Eagle–Picher Industries v. Liberty Mutual Insurance Company*, 829 F.2d 227, 247–248 (1st Cir.1987) (citing *Cohen v. McDonnell Douglas Corporation*, 389 Mass. 327, 450 N.E.2d 581, 585 (1983)); *Alves v. Siegel's Broadway Auto Parts, Inc.*, 710 F.Supp. 864, 869–870 (D.Mass.1989).

The SJC, however, "has refused to bind itself to a single choice of law doctrine" applicable to torts. *Reisch v. McGuigan*, 745 F.Supp. 56, 59 (D.Mass.1990); *see Alves v. Siegel's Broadway Auto Parts, Inc.*, 710 F.Supp. at 870 (collecting Massachusetts state and federal cases using different approaches). In analyzing the pertinent choice influencing considerations, state and federal courts in Massachusetts nevertheless increasingly rely on the *Restatement (Second) of Conflict of Laws* (1971). *Reisch v. McGuigan*, 745 F.Supp. at 59; *see Computer Systems Engineering, Inc. v. Qantel Corporation*, 740 F.2d 59, 70 (1st Cir.1984) (recognizing that SJC "would apply a test not materially different from the *Restatement (Second) of Conflict of Laws* § 148" to intentional misrepresentation claim).

Section 145(1) of the *Restatement (Second) of Conflict of Laws* (1971) provides that, "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Subsection (2) lists the following four contacts which a court should consider in determining the applicable law:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

---

**31.** Paragraph 58 alleges that, "CSC acted in concert and pursuant to a common design with [Blue Cross] and Bay State to misappropriate the trade secrets of TSI." Paragraph 63 states that, "CSC knowingly and intentionally caused, assisted, aided and abetted Bay State to misappropriate the trade secrets of TSI."

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Restatement (Second) of Conflict of Laws* § 145(2) (1971).

■ These factors predominantly favor applying Massachusetts law. As reflected in the complaint, CSC is a Massachusetts corporation with a principal place of business in Waltham, Massachusetts. "CSC personnel who worked on the Baystar Project worked on site at Bay State headquarters located in Cambridge, Massachusetts." (Docket Entry # 1, ¶¶ 2 & 27, 95–10284). Aside from TSI's location in Florida and the alleged creation of the licensed software in Florida, there is little to connect the conduct at issue to Florida.

As discussed in the commentary to section 145 of the *Restatement (Second) of Conflict of Laws* (1971), the place where the injury occurred in a misappropriation of trade secrets claim, i.e., "the plaintiff's headquarters or principal place of business," does not play as "important a role." "Instead, the principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from .... the misappropriation of trade values." [32] *Restatement (Second) of Conflict of Laws*, § 145, Comment (f) (1971). Case law is not to the contrary. *See, e.g., Permagrain Products v. U.S. Mat & Rubber Company, Inc.,* 489 F.Supp. 108, 111 n. 1 (E.D.Pa.1980) (applying Massachusetts law to trade secrets claim under "most significant relationship" test where the defendant was Massachusetts corporation and developed trade secret in Massachusetts); *Data Cash Systems, Inc. v. JS & A Group, Inc.,* 480 F.Supp. 1063, 1071 (N.D.Ill.1979), *aff'd,* 628 F.2d 1038 (7th Cir.1980) ("principal location of the defendant's conduct is the contact that is usually given the greatest weight in determining" law to apply to unfair competition claim).

Having considered TSI's arguments and weighed the various contacts, this court finds Florida law does not apply to the instant dispute. Count I applying Florida law therefore fails to state a claim upon which relief may be granted.

## III. TINGLEY SYSTEMS, INC.'S MOTION FOR LEAVE TO FILE AMENDMENT TO COMPLAINT (DOCKET ENTRY # 74, 93–12230)

TSI moves to amend the verified amended complaint it filed in August 1994 in 93–

---

**32.** The full text of the commentary reads as follows:

> the place of injury is less significant in the case of ... such unfair competition as consists of false advertising and the misappropriation of trade values. The injury suffered through false advertising is the loss of customers or of trade. Such customers or trade will frequently be lost in two or more states. The effect of the loss, which is pecuniary in its nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business. But this place may have only a slight relationship to the defendant's activities and to the plaintiff's loss of customers or trade. The situation is essentially the same when misappropriation of the plaintiff's trade values is involved, except that the plaintiff may have suffered no pecuniary loss but the defendant rather may have obtained an unfair profit. For all these reasons, the place of injury does not play so important a role for choice-of-law purposes in the case of ... the misappropriation of trade values as in the case of other kinds of torts. Instead, the principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from ... the misappropriation of trade values.

*Restatement (Second) of Conflict of Laws,* § 145, Comment (f) (1971).

12230 to include nine additional paragraphs alleging a cause of action for fraud against Bay State. (Docket Entry # 74, 93–12230). Bay State opposes amendment on the ground of undue delay and prejudice as well as futility for failure to comply with Rule 9(b), Fed.R.Civ.P. The parties filed reply and surreply briefs and exhibits which are presently before this court. The procedural background is largely set forth in the background section in part I.

The undue delay argument centers around when TSI gained sufficient facts to plead a cause of action for fraud against Bay State. The fraud concerns representations made by Jim Carmona ("Carmona") of Bay State in April or May of 1990 and in October of 1990 that Bay State would maintain a "Chinese wall" and "clean room procedures" to protect persons developing Bay State's independent computer system from accessing TSI's software or system. TSI contends that it did not uncover sufficient facts to bring a fraud claim until after the close of discovery when it uncovered certain documents supplied in November 1994 amidst an estimated 25,000 other documents. TSI filed its motion in February 1995.

Bay State submits excerpts from deposition transcripts wherein it attempts to show that TSI could have asserted its claim at the outset of this litigation in June 1993 or at least no later than February 1994 and/or August and September 1994. TSI disputes these assertions inasmuch as Bay State consistently maintained that the POS and DSS software packages were independent creations of Bay State. Hence, it was not until TSI had access to documents in the late fall of 1994 that CSC's access to the TSI software and Bay State's failure to erect a Chinese wall and clean room procedures became apparent.

## DISCUSSION

■ The standards for allowance of a motion to amend under Rule 15(a), Fed. R.Civ.P., are well known. Rule 15(a), Fed. R.Civ.P., provides that leave to amend a pleading "shall be freely given when justice so requires." Absent futility, undue delay and undue prejudice, in addition to other grounds not pertinent to this discussion, Rule 15(a) generally requires allowance of amendments. *Vargas v. McNamara*, 608 F.2d 15, 18 (1st Cir.1979); *see also Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 896 (1st Cir.1979); *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15, 19 (1st Cir.1979) (undue delay can be basis for denial; court should also consider prejudice to opposing party).

Turning to undue delay and prejudice, this court "may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party." *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d at 19 (noting that "'undue delay' can be a basis for denial"); *see Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1121 (1st Cir.1989) (upholding district court's decision to deny amendment on basis of undue delay); *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 896 (1st Cir.1979). "Where a considerable period of time has passed between the filing of the [pleading] and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay." *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d at 17–20 (delay of more than two years sufficient to shift burden).

TSI meets this burden. The fact that the moving party learned of the basis for its new allegations during discovery is a valid basis for delay in filing a motion to amend. *See Picker International, Inc. v. Leavitt*, 128 F.R.D. 3, 9 (D.Mass.1989) (allowing motion to amend complaint where

motion filed promptly after new facts learned through discovery). Having reviewed the facts surrounding TSI's knowledge of Bay State's failure to maintain a Chinese wall and to use clean room procedures to protect TSI's software, this court finds that TSI uncovered the relevant facts to support its fraud claim in the fall of 1994. Although TSI thereafter delayed filing its motion until February 1995, such delay is not so prejudicial to Bay State to justify denial of amendment.

While it is true that this court may deny an amendment on the grounds of undue prejudice, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922, 933 (1st Cir.1983), the parties do not have a trial date. At the June 5, 1995 hearing, Bay State indicated a need to take discovery from three individuals in the event this court allowed the amendment. TSI stated a desire to take the deposition of Carmona. This court will allow Bay State to conduct the aforementioned discovery through the use of written deposition questions submitted to these three individuals on or before August 14, 1995. Similarly, TSI may submit written deposition questions to Carmona on or before August 14, 1995. All such discovery is limited to the subject matter of the proposed amendment.

Turning to Bay State's futility argument, it is undeniable that futility constitutes an adequate basis to deny a proposed amendment. *Demars v. General Dynamics Corp.*, 779 F.2d 95, 99 (1st Cir.1985); *Liberty Leather Corp. v. Callum*, 653 F.2d 694, 700 (1st Cir.1981). A proposed amendment is futile if it cannot survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P.

*Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 59 (1st Cir.1990).

■ Bay State contends that the proposed pleading fails to satisfy the particularity requirements of Rule 9(b), Fed. R.Civ.P. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent [and] knowledge ... may be averred generally." In order to comply with Rule 9(b), the claim must allege " 'the time, place, and content of an alleged false representation, but not the circumstances or evidence from which the fraudulent intent could be inferred.' " *Boyle v. Merrimack Bancorp, Inc.*, 756 F.Supp. 55, 58 (D.Mass. 1991) (quoting *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980)). The general purposes for this special pleading requirement are: (1) to provide the defendants with notice of the grounds on which the plaintiff's fraud claim rests; (2) to prevent the use of a groundless fraud claim as a pretext for discovering a wrong; and (3) to protect the defendants from frivolous claims that may harm their reputations. *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir.1987); *see Wayne Investment, Inc. v. Gulf Oil Corporation*, 739 F.2d 11, 13–14 (1st Cir.1984) (discussing special pleading requirement).

■ Citing *Wells v. Monarch*, 1991 WL 354938 (D.Mass. Aug. 23, 1991), a securities fraud case, Bay State rests its argument on the ground that the proposed pleading does not adequately particularize TSI's reliance on the alleged misrepresentation.[33] "To state a cause of action for fraud under Massachusetts law, [TSI] must allege," among other elements, that it "relied upon [the misrepresentation] to [its] damage." *Enterprise Finance Leas-*

---

**33.** TSI does not address Bay State's arguments with respect to Rule 9(b), Fed.R.Civ.P.

*ing Company v. Westford Regency Inn, Inc.,* 1990 WL 279512 at * 1 (D.Mass. Oct. 26, 1990) (allowing motion to dismiss for failure to comply with Rule 9(b) albeit with leave to amend).

Bay State contends that TSI only makes a conclusory allegation of reliance, to wit, that "TSI relied on the false representations to its detriment." (Docket Entry # 74, proposed amendment, 93–12230). In *Frontier Management Company, Inc. v. Balboa Insurance Company,* 658 F.Supp. 987, 992 (D.Mass.1986), however, the court deemed that a pleading alleging that the plaintiffs in counterclaim "relied on such misrepresentations and have been greatly damaged thereby" was sufficient to comply with Rule 9(b).

In addition, the proposed pleading incorporates paragraphs one through 47 of the verified amended complaint. These paragraphs describe the intricacies of the software, its proprietary nature, the cost of developing the software and the efforts TSI employs to maintain the confidentiality of its software. Such averments reasonably infer that TSI would have taken additional action had it known of Bay State's failure to erect a Chinese wall and its failure to use clean room procedures.

Moreover, the specific paragraphs applicable to the fraud claim adequately set forth the circumstances surrounding the fraud. The paragraphs describe the negotiations between TSI and Bay State concerning Bay State's proposed purchase of the use of the TSI software to develop an independent system between April and December of 1990. The third paragraph explicitly states that:

Carmona represented to TSI on behalf of Bay State HM, in April or May, 1990 and in October of 1990, that a "Chinese wall" and clean room development approach were being utilized by Bay State HM to develop Bay State HM owned software, and that no one who worked with or had access to the TSI system would be developing Bay State HM owned software. He represented that all Bay State HM owned software was being created through "independent development."

(Docket Entry # 74, proposed amendment, 93–12230). The fourth paragraph further explains that, "no such procedures were used." Such an allegation would make it reasonable to determine and infer that the representations were false and that Carmona knew such representations were false. *See Lindner Dividend Fund, Inc. v. Ernst & Young,* 880 F.Supp. 49, 57 (D.Mass.1995) (citing *Greenstone v. Cambex Corporation,* 975 F.2d 22, 25 (1st Cir. 1992)).

The proposed pleading adequately serves the purposes behind Rule 9(b)'s particularity requirements. It provides Bay State with sufficient notice to prepare a meaningful response. It is sufficiently specific to demonstrate that TSI is not filing frivolous allegations or submitting a groundless claim. In short, the proposed pleading survives a Rule 9(b) dismissal. For organizational clarity, TSI is directed to file forthwith a single proposed complaint containing the proposed Count X as well as the paragraphs in its earlier verified amended complaint (Docket Entry # 10, 93–12230).

IV. *TINGLEY SYSTEMS, INC.'S MOTION TO SUPPLEMENT BAY STATE'S DEPOSITION EXCERPTS (DOCKET ENTRY # 83, 93–11283); TINGLEY SYSTEMS, INC.'S MOTION TO STRIKE MATERIAL DEPOSITION TESTIMONY ALTERATIONS MADE IN BAY STATE'S WITNESSES' ERRATA SHEETS (DOCKET ENTRY # 69, 93–12230)*

TSI moves to strike certain changes made to errata sheets by Bay State depo-

nents or, in lieu thereof, to reopen the depositions to inquire about the reasons for the altered testimony contained in the errata sheets. (Docket Entry # 69, 93–12230). Bay State opposes the motion and submits excerpts of deposition transcripts to support its position. (Docket Entry # 77, 93–12230).

TSI further moves to supplement the deposition excerpts submitted by Bay State. (Docket Entry # 83, 93–11283). Although Bay State opposes the motion to supplement (Docket Entry # 92, 93–11283), this court will consider the additional deposition excerpts submitted by TSI. Such additional excerpts serve to provide this court with a more complete record in the course of deciding the motion to strike.

TSI offers the errata sheets as exhibit A and requests that this court strike the alterations. The errata sheets contain corrections made in 117 different places in the depositions of Robert DiRamio ("DiRamio"), Brian B. Harney ("Harney"), David Sykes ("Sykes"), Kathy Vermillion ("Vermillion") and Daniel Westlake ("Westlake"). TSI does not provide this court with complete copies of all of the excerpts of the depositions wherein all of these corrections are located.

Instead, TSI's memorandum provides 22 express examples of the 117 corrections. TSI submits excerpts of the deposition transcripts to support all of the 22 quoted corrections except for two corrections made by Sykes. Bay State's opposition provides copies of the relevant excerpts of Sykes' deposition.

TSI contends that the errata sheets materially alter the substance of the deponents' testimony with the only explanation

being the word "clarification." The errata sheets, however, do not employ the explanation "clarification" throughout. Rather, the errata sheets often explain the reasons for the changes with words such as "typographical error," "correction of misstatement," "did not remember," "not what I said" and "misunderstood question." (Docket Entry # 70, Ex. A, 93–12230).

As to the 22 corrections quoted in TSI's memorandum, four of the 22 corrections note the explanation "correct misstatement," "correction of misstatement" or "misunderstood question." The remaining corrections, however, contain the explanation "clarification."

TSI argues that the deponents' reasons for the changes are insufficient or conclusory. TSI further contends that the deponents are lacking in good faith and are attempting to materially alter the substance of their testimony. TSI seeks to avoid allowing the deponents to use their explanations as prior consistent statements at trial.

Bay State submits that the changes do not render the depositions so incomplete as to justify reopening testimony. Moreover, according to Bay State, Rule 30(e), Fed.R.Civ.P. ("Rule 30(e)"), allows a deponent to change the substance of his answer. Bay State additionally maintains that the changes are not so voluminous to support striking the changes.

## DISCUSSION

Rule 30(e), amended in 1993, allows a deponent to make "changes in form or substance" to a deposition transcript provided the deponent complies with the procedures of the rule.[34] Although there is

---

**34.** The full test of the subdivision reads that: If requested by the deponent or a party before completion of the deposition, the de-

ponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review

authority to the contrary, *see Greenway v. International Paper Company,* 144 F.R.D. 322, 324–325 (W.D.La.1992);[35] *Rios v. Bigler,* 847 F.Supp. 1538, 1546 (D.Kan.1994), the express language of Rule 30(e) allows a deponent to change the substance of his answers. Hence, "changed deposition answers of any sort are permissible." *Luhman v. Dalkon Shield Claimants Trust,* 1994 WL 542048 (D.Kan. Oct.3, 1994) (collecting authority but allowing the defendant to redepose the plaintiff); *accord Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398 (N.D.Ill.1993) (Rule 30(e) allows witness to change testimony even to contradict original testimony so long as he provides a reason); *United States ex rel. Burch v. Piqua Engineering, Inc.,* 152 F.R.D. 565, 566–567 (S.D.Ohio 1993) (Rule 30(e) permits "changed deposition answers of any sort . . ., even those which are contradictory or unconvincing"); *Lugtig v. Thomas,* 89 F.R.D. 639, 641 (N.D.Ill.1981) ("language of the rule places no limitations on the types of changes that may be made by a witness"); *Allen & Co. v. Occidental Petroleum Corporation,* 49 F.R.D. 337, 340 (S.D.N.Y.1970) ("cases construing [Rule 30(e) ] are clear that the witness may make changes of any nature, no matter how fundamental or substantial"). The deponent, however, must supply a reason for the changes which is not conclusory. *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. at 1406–1407 (must be reason for the change and

" 'it is not enough for the witness to give general conclusory reasons' ").[36]

■ The standard to reopen a deposition is whether the changes contained in the errata sheets "make the deposition incomplete or useless without further testimony." *Sanford v. CBS, Inc.,* 594 F.Supp. 713, 715 (N.D.Ill.1984) (citing *Allen* ); *accord United States ex rel. Burch v. Piqua Engineering, Inc.,* 152 F.R.D. at 567 (may reopen depositions if changes make " 'deposition incomplete or useless without further testimony' "); *Lugtig v. Thomas,* 89 F.R.D. at 642 (same).

With respect to the corrections in the errata sheets which contain the explanation "typographical error," all these corrections are legitimate corrections of errors in transcriptions made by the stenographer except for the following: (1) DiRamio's correction of "correct" to "incorrect" at page 23 of volume I of his deposition; (2) DiRamio's correction of "directly" to "indirectly" at page 145 of volume II of his deposition; and (3) Harney's correction of "We" to "CSC" at page 55 of his deposition. As such and except for the foregoing three corrections, the corrections with the explanation "typographical error" are part of the deposition testimony and are not stricken. Nor will this court allow TSI to reopen the depositions to inquire about these changes.

the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them. The officer shall indicate in the certificate prescribed by subdivision (f)(1) whether any review was requested and, if so, shall append any changes made by the deponent during the period allowed.
Rule 30(e), Fed.R.Civ.P.

**35.** The *Greenway* decision does not cite to any authority for its reasoning and result.

**36.** Rule 30(e) sets forth certain procedural requirements including that the original and changed answer remain part of the record for use at trial. *See Perkasie Industries, Corporation v. Advance Transformer, Inc.,* 1992 WL 166042 at * 2 (E.D.Pa.1992) (summarizing restrictions).

Similarly, DiRamio's corrections at pages 10 and 138 of volume I of his deposition were made to correct errors made in transcription by the stenographer. Harney's corrections at pages 42, 51, 102, 119 (line 13) and 137 are also proper inasmuch as they appear to correct errors in transcription made by the stenographer. Vermillion's "correction of misstatement" at page 37 of volume II of her deposition corrects the testimony to reflect what she said as opposed to what was transcribed. All of the foregoing corrections were proper and shall remain part of the deposition record. These changes do not significantly alter the deposition such as to render it incomplete without further testimony. Accordingly, TSI may not reopen the depositions to ask the deponents about the reasons for the above changes.

▆▆ Having reviewed the remainder of the explanations, however, this court finds it necessary to reconvene the depositions for a limited period of time. *See, e.g., Luhman v. Dalkon Shield Claimants Trust,* 1994 WL 542048 (D.Kan. Oct. 3, 1994) (allowing further deposition limited to one hour time period). The 22 corrections quoted in TSI's memorandum materially alter the answers such as to render those portions of the deposition incomplete absent further testimony. Having reviewed the remaining changes, this court finds that the number and type of changes made to the depositions justify a reopening for the limited purpose of inquiring into the reasons for the changed answers and where the changes originated. *See Lugtig v. Thomas,* 89 F.R.D. at 642 (allowing further testimony in these limited areas and noting that "number and type of changes made by the defendant-deponent in this case justify allowing the plaintiff to reopen"). No deposition shall extend beyond the subject matter of the reasons for the changes and the origination of the

changes, i.e., whether such changes originate with the attorney or the deponent. The depositions of DiRamio, Harney and Vermillion are limited to a time period of three hours, including cross examination. The deposition of Westlake is limited to a time period of two hours including cross examination. The deposition of Sykes is limited to a time period of one hour including cross examination.

## V. *TINGLEY SYSTEMS, INC.'S MOTION FOR ENTRY OF DEFAULT JUDGMENT (DOCKET ENTRY #23, 95–10284)*

TSI moves for the entry of a default judgment under Rule 55, Fed.R.Civ.P., inasmuch as CSC has not filed an answer to Count III of the complaint in 95–10284. (Docket Entry #23, 95–10284). CSC points out, however, that it filed a motion to dismiss which, under Rule 12(a)(4), Fed. R.Civ.P. ("Rule 12(a)(4)"), extends the time period for filing an answer until ten days after notice of the court's action on the motion to dismiss. (Docket Entry #29, 95–10284). Notwithstanding Rule 12(a)(4), TSI urges that the fact that CSC filed a motion to dismiss counts I, II, IV, V, VI, VII and VIII, does not stay the time period for CSC to file an answer to Count III. (Docket Entry #23, 95–10284).

The issue is somewhat moot inasmuch as this opinion issues a decision on the motion to dismiss thereby triggering the ten day period within which CSC must file an answer to all of the remaining counts.

### DISCUSSION

TSI filed its complaint in 95–10284 on February 9, 1995. On March 2, 1995, CSC filed a motion to extend the time period for filing an answer up to March 17, 1995, which this court allowed by Endorsed Order. (Docket Entry #11, 95–10284). On

March 17, 1995, CSC filed its motion to dismiss. (Docket Entry # 17, 95–10284).

Rule 12(a)(1)(A), Fed.R.Civ.P., allows a party 20 days after being served with the summons and complaint to file an answer. Rule 6(b)(1), Fed.R.Civ.P., permits a party to file a motion to extend the time period for filing an answer within the time frame of the 20 day period. Although the day of service of the summons and complaint on CSC is unclear from the record, it appears that CSC's motion to extend the time period was filed within the 20 day time period. Hence, CSC's motion to dismiss was timely filed.

Rule 12(a)(4) states that, "Unless a different time is fixed by court order, the service of a motion permitted under this rule alters these time periods as follows: (A) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the court's action." Rule 12(a)(4), Fed. R.Civ.P. Notwithstanding this express language extending the time period for filing an answer, TSI asserts that CSC is in default because it has not answered the count not addressed in the motion to dismiss, i.e., Count III.

TSI relies on *Gerlach v. Michigan Bell Telephone Company*, 448 F.Supp. 1168 (E.D.Mich.1978), for its argument. The court in *Gerlach* considered whether filing a partial motion to dismiss certain counts stayed the time period for filing an answer as to the remaining counts. Reasoning that separate counts form independent bases for liability, the court in *Gerlach* found "no reason for delaying the progress of the litigation with respect to those counts of a complaint which are not addressed by a motion filed under Rule 12(b)." *Gerlach v. Michigan Bell Telephone Company*, 448 F.Supp. at 1174.

Since the issuance of the *Gerlach* decision, no court has relied on its reasoning or followed its ruling. In fact, one court explicitly rejected its reasoning. *Brocksopp Engineering, Inc. v. Bach–Simpson Ltd.*, 136 F.R.D. 485 (E.D.Wis.1991). Relying on the language of Rule 12(a) and criticizing the *Gerlach* approach, the court in *Brocksopp* determined that, "a partial 12(b) motion enlarges the time to file an answer" with respect to the claims not addressed in the motion to dismiss. *Brocksopp Engineering, Inc. v. Bach–Simpson Ltd.*, 136 F.R.D. at 486; *accord Baker v. Universal Die Casting, Inc.*, 725 F.Supp. 416, 420 (W.D.Ark. 1989). In addition, one commentator notes the disadvantage inherent in the *Gerlach* approach which results in the existence of duplicate pleadings if the motion to dismiss is denied. 5A Charles Allan Wright and Arthur R. Miller *Federal Practice and Procedure* § 1346 (1990). Finally, any advantage to the *Gerlach* approach through achieving a more expedited processing of the unaddressed counts is nonexistent in this case because this opinion issues a ruling on the motion to dismiss and therefore CSC is obligated to answer the complaint within ten days of notice of this opinion.

Entry of a default judgment is therefore inappropriate. CSC is directed to file an answer to the complaint within ten days of notice of this opinion.

### CONCLUSION

TSI's motion to consolidate (Docket Entry # 94, 93–12230) is **ALLOWED**. TSI's motion for leave to amend (Docket Entry # 74, 93–12230) is **ALLOWED**. TSI is directed to file forthwith a single proposed complaint containing the proposed Count X as well as the paragraphs in its earlier verified amended complaint (Docket Entry # 10, 93–12230).

TSI's motion to supplement (Docket Entry # 83, 93–11283) is **ALLOWED**. TSI's motion to strike (Docket Entry # 69, 93–12230) is **ALLOWED** in part and **DENIED** in part to the extent provided in section IV. TSI's motion for entry of default (Docket Entry # 23, 95–10284) is **DENIED**.

This court **RECOMMENDS**[37] that the motion to dismiss (Docket Entry # 17, 95–10284) be **ALLOWED** as to counts I, IV, VII and VIII and **DENIED** as to Count II for misappropriation of trade secrets under Massachusetts law. With respect to counts V and VI for civil conspiracy and aiding and abetting, this court **RECOMMENDS**[38] that the motion to dismiss (Docket Entry # 17, 95–10284) be **DENIED** as to paragraphs 58 and 63 which survive preemption and otherwise **ALLOWED**.

July 11, 1995.

---

**37.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega*, 678 F.2d 376, 378–79 (1st Cir. 1982); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986).

**38.** See the previous footnote.